IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL HOLMES,                                   )
                                                  )
                    Plaintiff,                    )
                                                  )
vs.                                               )
                                                  )
MAYOR FRANCIS G. SLAY,                            )
In his official capacity as Mayor and member of  )
The Board of Police Commissioners of the         )
  St. Louis Metropolitan Police Department,       )
                                                  )
and                                               )
                                                  )
BETTYE BATTLE-TURNER,                             )
In her official capacity as a member of the      )
Board of Police Commissioners of the St. Louis   )
Metropolitan Police Department,                   )
                                                  )
and                                               )
                                                  )
COL. RICHARD GRAY,                                )
In his official capacity as a member of the      )      Case No.  4:12-cv-2333
Board of Police Commissioners of the St. Louis   )
Metropolitan Police Department,                   )
                                                  )
and                                               )
                                                  )
CHIEF JEROME D. LEE,                              )
In his official capacity as a member of the      )
Board of Police Commissioners of the St. Louis   )
Metropolitan Police Department,                   )
                                                  )
and                                               )
                                                  )
COL. THOMAS IRWIN,                                )
In his official capacity as a member of the      )
Board of Police Commissioners of the St. Louis   )
Metropolitan Police Department,                   )
                                                  )
and                                               )
                                                  )      JURY TRIAL DEMANDED
                                                  )

1

BOBBY LEE GARRETT,                              )
in his official capacity as an officer of the  )
St. Louis Metropolitan Police Department       )
and individually,                              )
                                               )
and                                            )
                                               )
SHELL SHARP,                                   )
in his official capacity as an officer of the  )
St. Louis Metropolitan Police Department       )
and individually,                              )
                                               )
             Defendants.                       )

## **COMPLAINT**

**COMES NOW** Plaintiff Michael Holmes and for his cause of action against Defendants,

jointly and severally, states as follows:

### **PARTIES**

1.      Plaintiff Michael Holmes is a resident and citizen of the City of St. Louis, State of

Missouri, and he brings this action pursuant to 42 USC § 1983 et. seq.

2.      Defendant Francis Slay is a resident and citizen of the State of Missouri. At all

relevant times herein Defendant Slay was acting in his official capacity as Mayor and as a

member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

3.      Defendant Jerome D. Lee is a resident and citizen of the State of Missouri.  At all

relevant times herein Defendant Lee was acting in his official capacity as a member of the Board

of Police Commissioners of the St. Louis Metropolitan Police Department.

4.      Defendant Bettye Battle-Turner is a resident and citizen of the State of Missouri.

At all relevant times herein Defendant Turner was acting in her official capacity as a member of

the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

2

5.      Defendant Col. Richard Gray is a resident and citizen of the State of Missouri.  At all relevant times herein Defendant Gray was acting in his official capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

6.      Defendant Thomas Irwin is a resident and citizen of the State of Missouri.  At all relevant times herein Defendant Irwin was acting in his official capacity as a member of the Board of Police Commissioners of the St. Louis Metropolitan Police Department.

7.      At all relevant times Defendants Slay, Lee, Turner, Gray and Irwin (referred to collectively herein after as "the Board"), or their predecessors in interest, acting in their official capacities as members of the Board of Police Commissioners, controlled all relevant activities, policies, rules, customs and training of the officers of the St. Louis Metropolitan Police Department. At all times relevant hereto the St. Louis Metropolitan Police Department, under the control of the Board of Police Commissioners, acted through its agents and employees Defendants Sharp and Carr and other unknown members of the St. Louis Metropolitan Police Department.

8.      Defendant Bobby Lee Garrett is a Missouri resident and at all relevant times was an officer with or agent of the St. Louis Metropolitan Police Department.

9.      Defendant Shell Sharp is a Missouri resident and at all relevant times was an officer with or agent of the St. Louis Metropolitan Police Department.

## JURISDICTION

10.      Plaintiff brings this action for damages arising from the violation of his civil rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, which provide for this Court's jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343.   Pursuant to Title 28 U.S.C. §§2201

3

and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief found necessary and proper.

11.     Plaintiff hereby requests supplemental jurisdiction of his state law claims pursuant to 28 U.S.C. §1367.

## PROCEDURAL BACKGROUND

12.     On June 28, 2006 Michael J. Holmes was convicted by a jury in this court of possession of more than 50 grams of a substance containing cocaine base with intent to distribute and possession of firearms in furtherance of a drug trafficking crime. Pursuant to sentencing guidelines, Plaintiff was sentenced to a 20 year term of imprisonment on Count I and a consecutive 5 year term of imprisonment on Count II.

13.     Plaintiff's conviction was obtained through the false testimony at trial of City of St. Louis police officers, including officers Shell Sharp and Bobby Garrett.

14.     After newly-discovered evidence was discovered demonstrating the corruption of these officers responsible for Plaintiff's conviction, Plaintiff filed a Motion To Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. Section 2255 in the United States District Court for the Eastern District of Missouri.

15.     On September 26, 2011, the Honorable Carol E. Jackson entered her order granting Mr. Holmes' Motion to Vacate and found that (1) the testimony of Sharp and Garrett was completely discredited by the newly-discovered evidence; (2) Plaintiff had "consistently maintained that he is innocent and that Sharp and Garrett lied in their testimony[,]" and (3) the remaining evidence was insufficient to support Plaintiff's conviction. Plaintiff's conviction was vacated and a new trial ordered by the Court. Rather than seeking to retry Mr. Holmes, the government dismissed the underlying indictment and abandoned all charges against him.

4

## ALLEGATIONS COMMON TO ALL COUNTS

16.     This is a civil action seeking damages against defendants Bobby Lee Garrett and Shell Sharp in their personal and official capacities, and the members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department acting in their official capacities. Plaintiff seeks damages for the Defendants' actions, under color of state law, which deprived Michael Holmes of rights secured to him under the Constitution of the United States of America and the laws of the United States, including the right not to be deprived of his liberty without due process of law under the Fourteenth Amendment to the United States Constitution.

17.     Due to the violation of Plaintiff's civil rights by Defendants, Plaintiff spent over 5 years and 3 months in Federal holding facilities and prisons for a crime he did not commit.

18.     Each and all of the acts of Defendants Sharp and Garrett, as well as the acts of other police officers, agents and employees of the St. Louis Metropolitan Police Department, including officers of the Department whose identity is currently unknown to Plaintiff, were made under color and pretense of the statutes of the State of Missouri and the regulations, practices, customs, policies and usages of the Metropolitan St. Louis Police Department.

### Corruption of Officers Bobby Garrett and Shell Sharp

19.     Petitioner was incarcerated based on the testimony of Officer Shell Sharp, who left the department under charges.  At trial, Officer Shell Sharp provided the only substantive testimony regarding the alleged events of December 9, 2003. Officer Bobby Garrett also testified, claiming that Petitioner admitted in 1995 to Officer Garrett that he was a drug dealer. Subsequent to the filing of Mr. Holmes' post-conviction petition, allegations of corruption surfaced against both Officers Shell Sharp and Bobby Garrett, newly-discovered evidence

demonstrating their involvement in corruption and criminal activities, including framing innocent individuals and the systematic use of false testimony.

### 1.     Shell Sharp's History of Criminal and Corrupt Activities.

20.     Sharp was subject to an internal police investigation into allegations that he routinely falsified information in order to obtain search warrants: namely, he falsified information purportedly given by confidential informants and falsified observations allegedly made during surveillance.  See Robert Patrick, City Police Work Takes Another Hit, St. Louis Post Dispatch, April 20, 2009, at A1 (reporting that at least six Sharp cases involving search warrants were dropped by the Circuit Attorney following allegations that Sharp and others lied on affidavits in support of a warrant). According to local media, Shell Sharp was one of the first targets of an investigation "aimed at ferreting out officers who lied about tipsters."  See Robert Patrick, Officers Named 1 Dead, 1 Jailed as Informers, St. Louis Post-Dispatch, August 29, 2009, at A4 (reporting that in the preceding year, the circuit attorney's office dismissed twenty-two cases brought by Shell Sharp, a target of an internal affairs investigation).

21.     The allegations against Sharp included a history not only of lying about confidential informants and surveillance in sworn statements to obtain search affidavits, but also of perjured testimony in court.  Sharp retired in the midst of the investigation. The Government has taken the position that it will not vouch for Officer Sharp's credibility or his testimony in cases preceding the corruption investigation.

### 2.     Bobby Garrett's History of Criminal and Corrupt Activities.

22.     Officer Bobby Garrett was present at 5984 Cates on December 9, 2003, but did not participate in or witness the alleged surveillance and search.  Over objection, he testified at Petitioner's trial regarding a 1995 state arrest and charge against Holmes for trafficking in

cocaine base. Garrett testified falsely regarding that arrest, including his claim that Mr. Holmes inexplicably admitted during questioning that he was a drug dealer. The Court admitted Garrett's allegations at trial, to be considered on the issues of knowledge, intent and motivation.

23.      In fact, Garrett's testimony arose from Garrett's attempt to extort and frame Plaintiff. In connection with this arrest and charge, on January 5, 1995, Mr. Holmes filed an Internal Affairs complaint against Officer Bobby Garrett and others involved in the 1995 arrest alleging that he was threatened and physically and verbally abused, and that Garrett and other officers planted drugs in his house. Mr. Holmes ultimately entered an Alford plea in that case because he was innocent of the charges made by Garrett. Mr. Holmes received a two-year suspended imposition of sentence. Pursuant to the MULES System entry relating to the charge, Mr. Holmes' probation was successfully completed on February 13, 1998.

24.      Nevertheless, the government at trial and on appeal has repeatedly and wrongfully referred to this incident as a "guilty plea" and "conviction" for drug possession with intent to distribute. Indeed, the government made these allegations despite being actually aware of the truth. On March 16, 2006 the docket sheet was sent to Dara Antrum, of the United States Attorney's office at 111 S. 10th Street., Ste 2325. On April 10, 2006, a certified copy of the sentence and judgment from the case was prepared for Roger Keller, Assistant U.S. Attorney, at call for pickup. This was 3 months before Mr. Keller repeatedly stated before the jury that Mr. Holmes had a prior conviction. Yet again in its brief filed with the 8th Circuit Court of Appeals on April 30, 2007, the Government represented falsely to the Court of Appeals that Mr. Holmes' probation had been revoked and that sentence was imposed against him. The Government relied on evidence of a conviction that did not exist both in obtaining Mr. Holmes' wrongful conviction and in seeking to prevent the appellate court from correcting that injustice.

25.     Mr. Holmes had an outstanding work history, including a high paying job with a casino at the time of the arrest by Garrett.  The 1995 charge, as a result of Garrett's false claim that Plaintiff "confessed" for no reason whatsoever to being a drug dealer, resulted in automatic disqualification from that job. Plaintiff filed his Internal Affairs Complaint decades before Officer Garrett's corrupt activities were uncovered. In late 2008, Bobby Garrett and others were federally indicted on charges of corruption related to their official duties.  He later pleaded guilty to six felonies, and "admitted planting evidence, arresting an innocent man to cover up the theft of money and involvement in falsifying court documents, lab forms and police reports." See Corrupt former St. Louis cop gets prison time, STLToday.com, November 10, 2009. See also United States v. Garrett, 4:08CR703ERW (Mo. E.D. 2009).

26.     As set forth in the underlying indictment, Garrett stole money and drugs from a drug dealer, and then protected the dealer from investigation so he and his partner Vincent Carr could keep some of the seized funds.  The officers then planted evidence in order to frame another person for the crime. Garrett obtained a search warrant for the first-floor apartment of a building, saying he had information that drugs were sold and stored there.  Garrett and Carr stopped the building owner, who told them that any drugs belonged to the residents, not him. Garrett stopped and questioned a second-floor resident, who admitted he had crack cocaine, a gun and $32,000 cash in his apartment. The officers found drugs and a gun in the first-floor apartment, so Garrett planted the crack cocaine, a 9mm handgun and $3,710 cash taken from the second floor in the first floor apartment. The officers kept the rest of the cash.  Garrett and Carr let the second-floor resident go so he would not report the theft of his money, then arrested the building owner — who did not live there — and sought charges against him.  Garrett and Carr

8

subsequently lied in the police report and on evidence forms, lied to FBI agents about their actions and destroyed their notes.

### Facts of Malicious Prosecution, Wrongful Conviction and Imprisonment

27.     On the afternoon of December 9, 2003, Plaintiff Michael Holmes was called to the boarding house located at 5984 Cates to visit members of his family. Plaintiff parked his car across the street, and went in the house, and did not go back outside. As he was exiting the third floor bathroom in the building he was arrested by officers of the St. Louis Metropolitan Police Department.

28.     The residence at 5984 Cates was a boarding house where Mr. Holmes had previously resided and paid rent. At the time of the incident on December 9, 2003 Mr. Holmes lived in Ferguson with his then-fiance, and had not lived in the house on 5984 Cates since January of 2002.

29.     Plaintiff was falsely accused by Sharp of being in possession of approximately 200 grams of cocaine base. At trial, Sharp testified that a confidential source advised him that "Big Mike," a 270 pound black male wearing a yellow jumpsuit, was selling cocaine from the residence at 5894 Cates. Sharp claimed that he established surveillance of the premises in an unmarked vehicle across the street from the residence, during which he observed three "hand-to-hand" transactions between Plaintiff and two unidentified black males. Sharp could provide no further description of the other "black males," the types of vehicles they drove, or the direction these suspected narcotic purchasers travelled in following these transactions. The police report, which was dictated by Sharp, did not identify the vehicles, the license plates or any further description of these two black males. Sharp did not radio any of the other nine officers on standby at a nearby location to advise them about the vehicles suspected to be departing with

narcotics. The police report described a transaction between Mr. Holmes and a third black male which Sharp later admitted never happened and/or was a typographical error. In fact, Sharp's false testimony regarding these transactions is part of pattern whereby Sharp routinely falsified information in order to obtain search warrants, including falsifying information purportedly given by confidential informants and falsifying observations of "transactions" purportedly made during surveillance.

30.     Sharp further testified at trial that he radioed the standby officers to come to the scene, and approached the residence at 5984 Cates to do a knock and talk. The door was opened by 85 year old Maetta Griffin, Mr. Holmes' grandmother, to whom Sharp testified he told about the information from the alleged confidential informant and the transactions he witnessed during surveillance, and who then gave consent to search the residence.

31.     In the police report, Sharp claimed that when the officers entered the house they saw Mr. Holmes coming down the stairs. At trial, Sharp testified that he and Ray did not see Mr. Holmes until they reached the second floor landing, where they saw Mr. Holmes coming down the stairs carrying a brown paper bag. Sharp claimed falsely that Mr. Holmes dropped this bag in plain sight of the officers and then ran back upstairs. Sharp testified that Officer Ray detained Mr. Holmes while Sharp looked into the bag to determine whether it contained controlled substances, and found cocaine.

32.     Sharp testified falsely that Holmes told him he lived on the third floor, and even identified his "bedroom" to the officers. Sharp testified that after searching the room identified by Plaintiff, the officers recovered a roasting pan, glass beakers, a scale, some heroin, $4000 from an open safe, baggies, a shotgun and two bags of rubber bands. The officers did not search the rest of the house. Sharp admitted that there were two other two black males present in the

10

house that day, but could not recall what they looked like or how they were dressed. The police report indicated that both of these men were in the house. Sharp testified that he did not ask those people which bedrooms they lived in or otherwise interview them.

33.    Sharp's testimony was false. As in other, similar cases, Sharp manufactured testimony in order to frame Plaintiff for possession of the crack cocaine. Plaintiff did not have or "throw down" a brown bag on the stairs in front of the officers. He was never in possession of the weapons, drugs or other paraphernalia admitted into evidence.

34.    Officer Bobby Garrett was present at 5984 Cates on December 3, 2009, but did not participate in or witness the alleged surveillance and search. Over objection, and as part of the malicious prosecution of Plaintiff, he falsely testified at trial regarding a 1995 state arrest and charge against Mr. Holmes for trafficking in cocaine base. Garrett testified that Mr. Holmes admitted during questioning following this arrest that he was a "drug dealer." The Court admitted this false evidence to be considered on the issues of knowledge, intent and motivation.

35.    The testimony by convicted felon Bobby Garrett that Mr. Holmes was an 'admitted drug dealer' was the last evidence submitted by the government prior to sending the case against Petitioner to the jury. Officer Garrett's false testimony was highly inflammatory, instrumental and successful in obtaining the wrongful conviction and imprisonment of Petitioner. As such, it was material in carrying out the malicious prosecution of Plaintiff, resulting in his illegal and unconstitutional imprisonment.

## COUNT I

### § 1983 CLAIM FOR VIOLATION OF CIVIL RIGHTS
### BY BOBBY GARRETT AND SHELL SHARP IN THEIR
### OFFICIAL AND PERSONAL CAPACITIES

COMES NOW Plaintiff Michael Holmes, and for his cause of action against Defendants

Bobby Garrett and Shell Sharp, in their official and personal capacities, and states as follows:

36.      Plaintiff incorporates each paragraph set forth above in this Complaint the same

as if fully set forth herein.

37.      Section 1983 "provides a federal cause of action for the deprivation, under color

of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of

the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93

(1994).

38.      On information and belief, Defendants Garrett and Sharp, under color of state

law, violated Plaintiff's civil rights and deprived him of rights, privileges, and/or immunities

secured by the Constitution and laws of the United States, as set forth and, *inter alia,* by the

following acts:

a)      Planting evidence at the scene and falsely testifying that Plaintiff dropped the bag

of crack cocaine and that Plaintiff had previously admitted to being a "drug dealer";

b)      Providing false information in the police report and in other documents and

reports prepared pursuant to their duties with the Department;

c)      Providing false testimony to federal prosecutors and testifying falsely against

Plaintiff at trial, in order to wrongfully, illegally and unconstitutionally deprive Plaintiff

of his freedom;

12

d)      Framing Plaintiff for a crime he did not commit and obtaining his   conviction; and

e)      Allowing Plaintiff to languish in prison for over 5 years and 3 months, despite Defendants' knowledge that Plaintiff did not commit the crime alleged.

39.     As a direct result of Defendants Garrett and Sharp's unlawful and unconstitutional acts, performed under color of state law, Plaintiff was damaged, including by being deprived of his right to be free from the unreasonable seizure of his person and by being incarcerated without due process of law in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and other applicable laws.

40.     The acts of Bobby Garrett and Shell Sharp as set forth above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants Garrett and Sharp in order to punish and to deter them and others similarly situated from like conduct in the future.

41.     Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants Garrett and Sharp for compensatory damages in an amount which is fair and reasonable, in their personal and official capacities, for punitive damages in order to punish Defendants Garrett and Sharp and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, his attorney's fees, and for such other and further relief as the Court deems proper under the circumstances.

## COUNT II

### PLAINTIFF'S CAUSE OF ACTION
### AGAINST THE BOARD OF POLICE COMMISSIONERS
### OF THE CITY OF ST. LOUIS FOR VIOLATION OF CIVIL RIGHTS
### THROUGH ITS POLICY, CUSTOM AND PRACTICE OF RELIANCE
### ON FALSE AFFIDAVITS AND FALSE TESTIMONY
### COGNIZABLE UNDER 42 U.S.C. § 1983

COMES NOW Plaintiff Michael Holmes, and for his cause of action against The Board of Police Commissioners of the City of St. Louis, in their official and personal capacities, states as follows:

42.     Plaintiff incorporates each paragraph set forth above in this Complaint the same as if fully set forth herein.

43.     Defendants The Board of Police Commissioners are vested with the authority to establish policies or customs, practices and usages of the Metropolitan St. Louis Police Department. There exists within the Metropolitan St. Louis Police Department policies or customs, practices and usages that are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Plaintiff as have been set forth herein.

44.     Namely, prior to the search of the premises and the arrest, prosecution, and incarceration of Plaintiff, and continuing thereafter, customs, practices and usages existed within the St. Louis Metropolitan Police Department of officers employing false testimony to obtain search and arrest warrants, in police reports, and by testifying falsely at trial, in order to ensure the conviction of suspects regardless of their guilt or innocence, and particularly with regard to those purportedly suspected of being involved in the sale and distribution of illegal narcotics.

45.     This pervasive practice of reliance on false testimony resulted in the widespread deprivation of due process rights afforded to Plaintiff and others under the Fifth and Fourteenth Amendments.

46.     The use of false testimony constituted misconduct so pervasive among the officers of the Department as to constitute a custom or usage with the force of law.

47.     Evidence of these widespread customs, practices and usages within the Department available to Defendants The Board of Police Commissioners of the City of St. Louis included a large number of nearly identical, pro forma affidavits, as well as testimony at trial, by officers regarding information from confidential informants and purported results of surveillance of properties. This false testimony was routinely employed in support of warrants, in order to show probable cause for searches and arrests, and in order to obtain convictions.

48.     Furthermore, on information and belief, the members of the Board of Police Commissioners of the City of St. Louis and other officials of the Department with policy-making authority were aware of the ongoing misconduct by the officers of the Department in their use of false testimony in affidavits and at trial.

49.     In the alternative, the misconduct was so widespread that the ignorance of the Board and any other policy-making officials of the Department constituted willfully turning a 'blind eye' to the ongoing deprivation of citizens' civil rights, such that Defendants are charged with knowledge of said customs, practices and usages within the Department of employing false testimony.

50.     As a direct result of Defendants' unlawful and unconstitutional acts, performed under color of state law, Plaintiff was damaged, including by being deprived of his right to be free from the unreasonable seizure of his person and by being incarcerated without due process

of law in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America, 42 U.S.C. § 1983, and other applicable laws.

51.     The acts of The Board of Police Commissioners of the City of St. Louis as set forth above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of plaintiff, thus entitling plaintiff to an award of punitive damages against Defendants in order to punish and to deter them and others similarly situated from like conduct in the future.

52.     Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants The Board of Police Commissioners of the City of St. Louis for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants The Board of Police Commissioners of the City of St. Louis and to deter them and others similarly situated from like conduct in the future, and for the costs of this action, his attorney's fees, and for such other and further relief as the Court deems proper under the circumstances.

## COUNT III

### PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO TRAIN, SUPERVISE, CONTROL, INSTRUCT OR DISCIPLINE AGAINST DEFENDANTS THE BOARD OF POLICE COMMISSIONERS COGNIZABLE UNDER 42 U.S.C. § 1983

COMES NOW Plaintiff Michael Holmes, and for his cause of action against The Board of Police Commissioners of the City of St. Louis, in their official and personal capacities, states as follows:

53.     Plaintiff incorporates each paragraph set forth above in this Complaint the same as if fully set forth herein.

54.     The members of the Board of Police Commissioners have exclusive management and control of the policies and practices of the Metropolitan St. Louis Police Department, including with regard to (1) properly preparing and providing accurate and truthful information in police reports; (2)  providing accurate and truthful testimony when testifying at trial; (3) preventing illegal and corrupt practices by officers; (4) not framing suspects for crimes they did not commit; and (5) in otherwise insuring that members of the Metropolitan St. Louis Police Department conduct themselves in a lawful manner in undertaking and performing their duties. Defendants The Board of Police Commissioners are vested with the authority to establish policies or customs, practices and usages of the Metropolitan St. Louis Police Department through training, supervision, discipline and otherwise controlling the officers of the Metropolitan St. Louis Police Department.

55.     Defendant the Board of Police Commissioners violated the Plaintiff's rights by custom and practice of failing to train, instruct, supervise, control and discipline the police officers of the Metropolitan St. Louis Police Department in (1) properly preparing and providing accurate and truthful information in police reports and affidavits; (2)  providing accurate and truthful testimony when testifying at trial; (3) preventing illegal and corrupt practices by officers; (4) not framing suspects for crimes they did not commit; and (5) in otherwise insuring that members of the Metropolitan St. Louis Police Department conduct themselves in a lawful manner in undertaking and performing their duties. Said customs, practices and usages caused the deprivation of plaintiff's rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, other laws of the United States, and the laws of the State of Missouri.

56.     The St. Louis Metropolitan Police Department's policies or customs, practices and usages of failing to train, instruct, supervise, control and discipline the police officers of the

17

Department are so pervasive that they constitute the policies of the department, such that they are and were the moving force behind and thereby caused the constitutional deprivations of the Plaintiff as have been set forth herein.

57.     The failure to train, discipline or supervise defendant Officers and others at the Metropolitan St. Louis Police Department has resulted in members of the Metropolitan St. Louis Police Department violating civil rights as a matter of custom in violation of clearly established law. Defendants' failure to train, supervise or discipline its officers is not objectively reasonable.

58.     As a result of the Board of Police Commissioners' failure to train, discipline or supervise the officers of the department, they deprived Plaintiff of his right to be free and not to be wrongfully, illegally and unconstitutionally imprisoned in violation of the Fourth, Fifth and Fourteenth Amendments and other provisions of the Constitution of the United States, remediable under 42 U.S.C. § 1983.

59.     The acts of Defendants as described above were intentional, wanton, malicious, evil and oppressive, or exhibited a reckless indifference to the federally protected rights of the Plaintiff, thus entitling Plaintiff to an award of punitive damages against Defendants The Board of Police Commissioners of the City of St. Louis, in their official capacities as members of the Board of Police Commissioners.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants The Board of Police Commissioners of the City of St. Louis in their official capacities, for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

**COUNT IV**

**PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS PROSECUTION UNDER
MISSOURI LAW AGAINST ALL DEFENDANTS**

COMES NOW Plaintiff Michael Holmes, and for his cause of action against all defendants, states as follows:

60.     Plaintiff incorporates each paragraph set forth above in this Complaint the same as if fully set forth herein.

61.     Defendants Garrett and Sharp testified falsely regarding Plaintiff's supposedly improper and criminal behavior in the underlying proceedings without probable cause in law or fact to do so.  Defendants lacked such facts and circumstances as to warrant a prudent person having the honest belief that the actions and the means taken in the criminal prosecution against Plaintiff were just, legal, and proper.

62.     The facts known to Defendants (including pertinent facts that could have been ascertained by Defendants through the exercise of due diligence prior to instituting the judicial proceeding against Plaintiff) did not support any allegation that Plaintiff had possessed the crack cocaine for which he was convicted or that he had previously admitted to being a "drug dealer".

63.     The underlying litigation terminated in Plaintiff's favor when the Court vacated Plaintiff's conviction and ordered that Plaintiff immediately be released from prison, and the government abandoned all charges against him.

64.     In instigating, commencing and continuing the judicial proceeding against Plaintiff described above, Defendants Garrett and Sharp acted maliciously. Defendants intentionally engaged in wrongful acts and conduct without just cause or excuse in pursuing and taking affirmative steps to have Plaintiff wrongfully convicted, without any probable cause to do so and for improper purposes.

65.     At all relevant times, Defendants Garrett and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they maliciously prosecuted Plaintiff.

66.     As a result of Defendants' malicious prosecution of Plaintiff, Plaintiff was damaged, as set forth herein including by being wrongfully imprisoned for over 5 years and 3 months.

67.     Defendants' malicious prosecution, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Plaintiff and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

### COUNT V

### PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL IMPRISONMENT UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

COMES NOW Plaintiff Michael Holmes, and for his cause of action against all defendants, states as follows:

68.     Plaintiff incorporates each paragraph set forth above in this Complaint the same as if fully set forth herein.

69.     As a result of Defendants Carr and Sharp's wrongful acts, as well as the acts of officers of the Department currently unknown to Plaintiff, Plaintiff was restrained against his will when he was arrested and then subsequently imprisoned for over 5 years and 3 months.

70.     The restraint was unlawful in that Defendants Carr and Sharp framed Plaintiff for a crime he did not commit, and obtained his arrest and conviction by providing false and misleading information to other officers of the Department, to federal prosecutors, and to the judge and jury at Plaintiff's criminal trial, all as set forth above.

71.     Defendants intended to cause this false imprisonment and wrongful confinement of Plaintiff.

72.     At all relevant times, Defendants Carr and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they wrongfully imprisoned Plaintiff.

73.     As a result of Defendants' wrongful imprisonment of Plaintiff, Plaintiff was damaged, including by being wrongfully imprisoned for over 5 years and 3 months.

74.     Defendants' wrongful imprisonment, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Plaintiff and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the

future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

## COUNT VI

## PLAINTIFF'S CAUSE OF ACTION FOR ABUSE OF PROCESS UNDER MISSOURI LAW AGAINST ALL DEFENDANTS

COMES NOW Plaintiff Michael Holmes, and for his cause of action against all defendants, states as follows:

75.     Plaintiff incorporates each paragraph set forth above in this Complaint the same as if fully set forth herein.

76.     Defendants Garrett and Sharp's acts in falsely implicating Plaintiff in criminal activity as set forth above constituted an improper use of process that was neither warranted nor authorized by the process. Among other things, Garrett and Sharp abused legal process by preparing a fraudulent affidavit in support of their application for a search warrant, by providing false or misleading information in the police report, by providing false or misleading information to federal prosecutors, and by testifying falsely at trial.

77.     Defendants abused legal process as set forth in paragraph 76 for an unlawful purpose and with an illegitimate and collateral objective, and have acted willfully and with an ulterior motive in their use of legal process, in that Defendants used legal process through their authority as police officers for purposes other than legitimately investigating and prosecuting criminal acts.

78.     At all relevant times, Defendants Garrett and Sharp were acting within the course and scope of their employment and agency relationship with the St. Louis Metropolitan Police Department, and acted as the employees, servants and agents of said Department and its

22

representatives, Defendants the Board of Police Commissioners of the City of St. Louis when they wrongfully imprisoned Plaintiff.

79.     As a result of Defendants' wrongful imprisonment of Plaintiff, Plaintiff was damaged, including by being wrongfully imprisoned for more than 5 years and 3 months.

80.     Defendants' abuse of process, as set forth above, was carried out intentionally, with an evil motive and/or with a reckless indifference and conscious disregard to the rights of Plaintiff, thereby entitling Plaintiff to punitive damages in an amount sufficient to punish and deter Defendants and others similarly situated from like conduct in the future.

WHEREFORE, Plaintiff Michael Holmes prays judgment against Defendants for compensatory damages in an amount which is fair and reasonable, for punitive damages in order to punish Defendants and to deter them and others similarly situated from like conduct in the future and for the costs of this action, attorney's fees, and such other and further relief as the Court deems fair and proper under the circumstances.

Respectfully submitted,

DOWD & DOWD, P.C.

By _____
RICHARD K. DOWD (33383)
ALEX R. LUMAGHI (56569)
100 North Broadway, Suite 1600
St. Louis, Missouri 63102
(314) 621-2500 - telephone
(314) 621-2503 - facsimile

*Attorneys for Plaintiff Michael Holmes*

23