**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-2333 HEA |
| | ) | |
| FRANCIS G. SLAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on separate motions to dismiss plaintiff's Amended Complaint filed by defendants Shell Sharp, Bobby Lee Garrett, and the members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department: defendants Mayor Francis G. Slay, Bettye Battle-Turner, Richard Gray, Jerome D. Lee and Thomas Irwin (collectively referred to as the "Board"). The motions are fully briefed and ripe for review. For the following reasons, the Board's motion to dismiss Counts V, VI and VII will be granted, and defendants Sharp and Garrett's motions to dismiss will be denied in all respects.

**Background**

This action was filed on December 17, 2012 by plaintiff Michael Holmes against the Board and two of its former police officers, defendants Sharp and Garrett. Plaintiff alleges that his federal civil rights were violated when he was arrested on December 9, 2003 at a boarding house he was visiting at 5984 Cates in the City of St. Louis, convicted on June 28, 2006 on charges of possessing with the intent to distribute more than 50 grams of a substance containing cocaine base and possession of firearms in furtherance of a drug trafficking crime, and imprisoned for a period of over five years based on false evidence manufactured by defendants Sharp and Garrett acting together.

Among other things, plaintiff alleges that Sharp systematically framed him by manufacturing evidence and providing false information to federal prosecutors regarding the alleged events on the day of plaintiff's arrest, and that Garrett performed surveillance at the scene of the arrest, interviewed plaintiff after his arrest, and manufactured evidence by falsely claiming to prosecutors that plaintiff had admitted during a 1995 arrest that he was a drug dealer. Plaintiff alleges that this conduct was part of a widespread conspiracy involving other St. Louis Police Department narcotics officers, of which Garrett was a ringleader.

Plaintiff also alleges that Garrett had previously attempted to "extort and frame" him during the 1995 arrest, after which plaintiff filed an Internal Affairs complaint with the St. Louis Police Department alleging that Garrett and others threatened him, physically and verbally abused him, and planted drugs in his house.[1] The Amended Complaint recounts that defendant Garrett and another former police officer, Vincent Carr, were later indicted and convicted on federal charges of corruption related to their official duties, including theft, conspiracy, making false statements,

---

[1]     Plaintiff alleges in the Amended Complaint that he entered an Alford plea, see North Carolina v. Alford, 400 U.S. 25 (1970), in the 1995 case because he was innocent of the charges made by Garrett, received a two-year suspended imposition of sentence, and successfully completed probation on February 13, 1998. Plaintiff states that despite this, the government "repeatedly and wrongfully" referred to the 1995 case as a "guilty plea" and "conviction" for drug possession with the intent to distribute. Am. Compl. ¶¶ 29-30.

        The Court notes that suspended executions of sentence are considered by Missouri courts to be final judgments, while suspended impositions of sentence are not. See Yale v. City of Independence, 846 S.W.2d 193, 194-95 (Mo. 1993). The Eighth Circuit has held, however, that both suspended impositions of sentence and suspended executions of sentence law qualify as prior final convictions under federal law for purposes of sentence enhancement under 21 U.S.C. § 841(b)(1)(A). See United States v. Craddock, 593 F.3d 699, 701 n.4 (8th Cir. 2010). In the underlying criminal case against plaintiff, the government filed a Criminal Information pursuant to 21 U.S.C. § 851 based on the 1995 arrest, resulting in an enhancement of plaintiff's sentence under § 841(b)(1)(A). See United States v. Holmes, No. 4:05-CR-522 CEJ (E.D. Mo.) (Docs. 28, 42).

2

planting evidence, arresting an innocent man to cover up their theft of money, and involvement in falsifying court documents, lab forms and police reports.[2]

Following the convictions of defendant Garrett and Carr, plaintiff filed an amended motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  On September 26, 2011, this Court, the Honorable Judge Carol E. Jackson presiding, ordered that plaintiff receive a new trial based on newly discovered evidence.  See Holmes v. United States, 4:08-CV-1142 CEJ (E.D. Mo.) (Docs. 39, 40).  On October 12, 2011, Judge Jackson issued an order vacating plaintiff's criminal conviction.  See United States v. Holmes, No. 4:05-CR-522 CEJ (E.D. Mo) (Doc. 101).  The government subsequently moved to dismiss the criminal indictment and abandoned all charges against plaintiff.  Plaintiff filed a Motion for Certificate of Innocence pursuant to 28 U.S.C. § 2513, which remains pending in Case No. 4:08-CV-1142 CEJ.

Plaintiff asserts federal civil rights claims against Sharp, Garrett and the Board pursuant to 42 U.S.C. § 1983, and supplemental state law claims for malicious prosecution, false imprisonment and abuse of process.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff need not provide specific facts in support of his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per

---

[2]     See United States v. Garrett, No. 4:08-CR-703 ERW (E.D. Mo.); United States v. Carr, No. 4:08-CR-703 ERW (E.D. Mo.).

3

curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted).  This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.  Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted).

4

**Discussion**

I. <u>Defendant Board's Motion to Dismiss</u>

The Board moves to dismiss plaintiff's state law claims of malicious prosecution, wrongful imprisonment and abuse of process against it in Counts V, VI and VII of the Amended Complaint. The Board states that plaintiff's claims against it are based solely on allegations that defendants Sharp and Garrett were at all relevant times acting as the "employees, servants and agents" of the St. Louis Metropolitan Police Department and the Board.  The Board asserts that it is entitled to dismissal based on sovereign immunity for the state law claims in Counts V, VI and VII, and also asserts that the applicable statute of limitations for Count VII has lapsed.

The Board states that under Missouri law, a claim against it based in tort is barred by the doctrine of sovereign immunity unless the claim is based on either (1) negligent driving by public employees, or (2) the dangerous condition of public property; pursuant to § 537.600.1, Missouri Revised Statutes (2000), and <u>Gregg v. City of Kansas City</u>, 272 S.W.3d 353 (Mo. Ct. App. 2008). The Board asserts that plaintiff's claims do not fit within either exception, and therefore his malicious prosecution, wrongful imprisonment and abuse of process claims against it are barred by sovereign immunity and the Court should dismiss them.

In response, plaintiff states that he was granted an extension of time and leave to perform discovery to determine whether the Board has waived the sovereign immunity defense raised in its motion by obtaining insurance coverage pursuant to § 537.610, Mo. Rev. Stat.  Plaintiff states that through discovery, the Board has represented that there are no potentially applicable insurance policies or insurance coverage, either at present or from the time period of the underlying conduct in 1977.  Plaintiff concludes that he "does not believe that the Board has waived its sovereign immunity defense as to Counts V, VI and VII."  Pl.'s Response at 2.

In Missouri, the doctrine of sovereign immunity generally protects public entities from liability for negligent acts.  Mo. Rev. Stat. § 537.600; State ex rel. Cass Medical Center v. Mason, 796 S.W.2d 621, 622 (Mo. 1990) (en banc).  Numerous Missouri court decisions have held that intentional torts are included in the protection of sovereign immunity.  See, e.g., Credit Acceptance Corp. v. Smith, 991 S.W.2d 720, 721 (Mo. Ct. App. 1999) (city entitled to sovereign immunity on conversion claim); Mitchell v. Village of Edmundson, 891 S.W.2d 848, 850 (Mo. Ct. App. 1995) (conversion claim; court stated, "Intentional torts have consistently been found to fall within the shield of sovereign immunity").  As the Board states, section 537.600.1 waives this immunity for injuries resulting from negligent acts or omissions by public employees operating motor vehicles, and for injuries resulting from the dangerous condition of a public entity's property.  Pursuant to § 537.610, "when a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased." Fantasma v. Kansas City, Mo., Bd. of Police Comm'rs, 913 S.W.2d 388, 391 (Mo. Ct. App. 1996) (citing State ex rel. Board of Trustees of City of N. Kansas City Mem'l Hosp. v. Russell, 843 S.W.2d 353, 360 (Mo. 1992) (en banc)).

As a result, absent the purchase of potentially applicable insurance, the Board is entitled to sovereign immunity.  Because plaintiff concedes that the Board has not purchased such insurance, the Board's motion to dismiss the state law claims in Counts V, VI and VII should be granted based on sovereign immunity.  As a result, it is not necessary for the Court to reach the Board's argument concerning the statute of limitations.

## II.  Defendants Sharp and Garrett's Motions to Dismiss

Defendants Sharp and Garrett (collectively "defendants") filed separate motions to dismiss. Defendants' motions assert similar arguments for dismissal of Counts I and VII of plaintiff's

Amended Complaint, and the Court will address the motions together as to those counts.[3] Defendants move to dismiss plaintiff's claims under 42 U.S.C. § 1983 in Count I, to the extent they are based on Sharp and Garrett's trial testimony, based on absolute immunity.  Defendants also move to dismiss plaintiff's state law abuse of process claims in Count VII for failure to plead sufficient facts to state a claim, and as barred by applicable statute of limitations

### A.  *Testimonial Immunity - Count I*

Count I asserts a claim for violation of plaintiff's civil rights pursuant to 42 U.S.C. § 1983. In their motions, defendants state there is absolute immunity from § 1983 claims for any person who provides sworn testimony at trial, Briscoe v. LaHue, 460 U.S. 325, 335 (1983), and that this immunity applies to all witnesses, including police officers testifying in criminal matters. Defendants state that the factual allegations of the Amended Complaint incorporated into Count I include several references to their testimony at plaintiff's criminal trial, specifically paragraphs 15, 26, 38 and 41 for defendant Sharp, and paragraphs 28 and 51(c) for defendant Garrett.  Defendants assert they are entitled to absolute immunity for testimony at trial.  Sharp contends that as a result, he is entitled to dismissal of plaintiff's § 1983 claims in Count I to the extent they are based on his trial testimony.  Defendant Garrett asserts that Count I alleges only that he testified falsely at plaintiff's criminal trial, and therefore he is entitled to dismissal of Count I against him in its entirety.

Plaintiff responds that defendants' arguments are premised on the assertion that his claims in Count I are based solely on their testimony before the jury, which is incorrect.  Plaintiff states that the essence of his claim in Count I is not that the defendant officers lied on the stand, but that they

---

[3]     The Court will separately address defendant Garrett's motion to dismiss Counts V and VI.

jointly manufactured the case against him from the very beginning, intentionally instigated false charges against him, suppressed exculpatory evidence, and intentionally framed him for a crime he did not commit.  Plaintiff states that absolute testimonial immunity has no application to the pretrial phase of a criminal case, including investigative conduct by an officer, or the officer's conduct as a complaining witness, citing Malley v. Briggs, 475 U.S. 335, 340-41 (1986).

Plaintiff states that Count I alleges Sharp and Garrett acting together did the following: (1) manufactured evidence against him, including planting evidence at the scene; (2) Sharp gave false statements in the police report and to federal prosecutors, including that plaintiff dropped a bag of crack cocaine and admitted to residing at 5984 Cates; (3) Garrett claimed to prosecutors that plaintiff had previously admitted to being a drug dealer; (4) provided false information in the police report and in other documents and reports prepared as part of defendants' official duties; (5) provided false information to federal prosecutors in order to wrongfully and illegally deprive plaintiff of his freedom; (6) framed plaintiff for a crime he did not commit and obtained his conviction; and (7) allowed plaintiff to languish in prison for over five years despite their knowledge that plaintiff did not commit the crime alleged.  See Amended Complaint  ¶¶ 51(a)-(g).  Plaintiff states that he also alleges Sharp and Garrett actively worked together and with other elements of the Police Department, as they have in other cases, to obtain his wrongful conviction, and that these allegations establish a plausible claim for relief, particularly in light of Garrett's conviction for corruption and Sharp's departure from the force while under investigation for involvement in corrupt activities.

Plaintiff also states that Garrett's false assertion plaintiff was an "admitted drug dealer" is relevant not only to Garrett's perjury at trial, but this assertion and Garrett's prior targeting of plaintiff was essential in instigating the investigation and purported search that resulted in plaintiff's arrest, in increasing the sentence he received, and in convincing federal prosecutors to pursue

charges.  Plaintiff states that the complaint also alleges Garrett engaged in other actions as part of the conspiracy, that were unrelated to his trial testimony.  See  ¶¶ 44-48.

Plaintiff argues that by taking these actions, Sharp and Garrett deprived him of his constitutional due process rights to a fair trial, and to not be framed for a crime he did not commit, citing Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012) ("all courts that have directly confronted the question before us agree that the deliberate manufacture of false evidence contravenes the Due Process Clause.") (quoted case omitted).  Plaintiff contends that Sharp and Garrett are not entitled to testimonial privilege for the conduct alleged in the Amended Complaint.

The Court will address the defendants' replies separately.

### 1. Defendant Sharp

Sharp replies that plaintiff's response glosses over the allegations of the Amended Complaint and goes beyond the scope of the motion to dismiss, which is "clearly limited to the portions of Count I of Plaintiff's Complaint regarding Defendant Sharp's trial testimony[.]"  Sharp Reply at 2.[4] Sharp contends plaintiff has raised no viable arguments in opposition to dismissal of his claims based on trial testimony, as set forth in paragraphs 15, 26, 38 and 41 of the Amended Complaint.

A review of the Amended Complaint shows that Paragraph 15 describes Judge Jackson's order granting plaintiff's § 2255 motion to vacate his conviction, and states in pertinent part that Judge Jackson found that Sharp (and Garrett's) testimony had been discredited by newly discovered

---

[4]     It is understandable that plaintiff responded to Sharp's motion to dismiss as it if were directed to the entirety of Count I.  Although the motion to dismiss asserts that Sharp is entitled to absolute immunity for his trial testimony against Holmes "and therefore, the portions of Count I of Plaintiff's Complaint based on his trial testimony fail to state a claim pursuant to 42 U.S.C. § 1983" (Doc. 58, ¶ 1), in contrast, Sharp's memorandum in support states in part, "Defendant is entitled to absolute immunity for his testimony at Plaintiff's criminal trial and Count I should be dismissed." Mem. Supp. Mot. Dismiss at 4 (Doc. 59).

evidence, and that plaintiff had "consistently maintained that he is innocent and that Sharp and Garrett lied in their testimony." Paragraph 26, when read in context following paragraph 25, states that newspaper reports concerning the internal police investigation against Sharp included allegations that he had a history of perjured testimony. Paragraph 38 does not mention testimony by Sharp and instead appears to describe the contents of the police report concerning plaintiff's arrest. Paragraph 41 does concern Sharp's trial testimony against plaintiff.

Under Supreme Court precedent, witnesses are entitled to absolute immunity for damages liability for perjured testimony, and this immunity extends to knowingly false testimony by police officers. Briscoe, 460 U.S. at 335. Although paragraph 41 of the Amended Complaint's factual allegations directly refers to Sharp's trial testimony and those allegations are incorporated into Count I's § 1983 claim, Count I itself does not allege that Sharp violated plaintiff's constitutional rights by offering perjured trial testimony against him. Instead, plaintiff alleges in Count I that Sharp acted together with Garrett and violated plaintiff's constitutional rights by (1) manufacturing evidence against him, including by planting evidence at the scene, (2) making false statements in the police report and to federal prosecutors, including that plaintiff dropped a bag of crack cocaine and admitted to residing at 5984 Cates, (3) providing false information in the police report and other documents, (4) providing false information to federal prosecutors in order to wrongfully and unconstitutionally deprive plaintiff of his freedom, (5) framing plaintiff for a crime he did not commit and obtaining his conviction, and (6) allowing plaintiff to languish in prison despite his knowledge that plaintiff did not commit the crime alleged. Amended Complaint ¶¶ 51(a)-(g).

The Court considers the limited allegations in the Amended Complaint concerning Sharp's trial testimony to be largely background information that helps to explain what happened to plaintiff and led to this lawsuit. While plaintiff cannot base a § 1983 claim on Sharp's trial testimony, see

Briscoe, 460 U.S. at 335, he does not appear to do so, and instead asserts that other conduct by Sharp violated his constitutional rights.  Accordingly, this aspect of Sharp's motion to dismiss should be denied.  Prior to trial, Sharp may ask the Court to revisit this issue through a motion in limine or proposed jury instruction, if necessary.

### 2. *Defendant Garrett*

Defendant Garrett replies that the Amended Complaint does not contain any allegations related to any specific conduct by him prior to plaintiff's arrest.  Garrett states that the crux of plaintiff's claims against him is his alleged trial testimony that plaintiff was an "admitted drug dealer."  Garrett argues that a complaint may be dismissed if it contains only "naked assertions" without "further factual enhancement," Iqbal, 556 U.S. at 678, and the sole allegation against him in Count I with any factual enhancement is that he testified falsely at plaintiff's trial.

Garrett further replies that while plaintiff contends he conspired with Sharp, Count I does not assert a conspiracy claim and he can only be liable under § 1983 for actions he personally took, citing Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990).  Garrett states that contrary to plaintiff's opposition memorandum, there are no allegations in the Amended Complaint that he manufactured false evidence.  Finally, Garrett states plaintiff's argument that his due process rights were violated because Garrett concealed from prosecutors that plaintiff was not an "admitted drug dealer" is directly contradicted by the Amended Complaint, which alleges that federal prosecutors were provided information regarding plaintiff's Alford plea prior to trial from a certified copy of the sentence and judgment.

As stated above, witnesses are entitled to absolute immunity for damages liability for perjured testimony, and this immunity extends to knowingly false testimony by police officers. Briscoe, 460 U.S. at 335.  Garrett's assertion that plaintiff's claims against him in Count I are based

11

solely on his allegedly false trial testimony that plaintiff was an "admitted drug dealer" is incorrect, however.  The factual background of the Amended Complaint alleges that in addition to testifying falsely at plaintiff's trial, Garrett (1) was present and performed surveillance at the scene of plaintiff's arrest, interviewed plaintiff after his arrest, and claimed to prosecutors that plaintiff admitted in 1995 that he was a drug dealer, Am. Compl. ¶¶ 19, 27; (2) informed prosecutors falsely that plaintiff had "inexplicably admitted during questioning that he was a 'drug dealer' during the 1995 arrest," and that prosecutors relied on this evidence in making the determination that they believed plaintiff was a drug dealer and in possession of narcotics on December 9, 2003, id. ¶ 28; (3) previously attempted to extort money from plaintiff and frame him for a drug crime in 1995, id. ¶ 29; (4) after plaintiff's arrest, indicated that he knew plaintiff had lived in Ferguson, Missouri for approximately two years and did not live at the 5984 Cates residence where he was arrested; id. ¶ 44; (5) interviewed plaintiff at the police station after his arrest and encouraged plaintiff to sign a consent form to search the premises in an attempt to validate the search and falsely establish that plaintiff lived at or had control of the premises at 5984 Cates and thus had authority to consent to the search, id. ¶ 45; (6) had plaintiff sign a "money disclaimer" during this interview attesting that plaintiff had no knowledge of any money in the house, to ensure that Garrett and other officers could steal and keep any money found in the house; id. ¶ 46; and (7) conferred with Sharp for at least an hour prior to plaintiff's trial; on information and belief to go over the details of Sharp and Garrett's conspiracy, id. ¶ 47.

Paragraph 28 of the Amended Complaint does include factual allegations directly referring to Garrett's trial testimony and those allegations are incorporated into Count I's § 1983 claim. However, Count I does not allege that Garrett violated plaintiff's constitutional rights by offering perjured trial testimony against him.  Instead, plaintiff alleges in Count I that Garrett acted together

12

with Sharp and violated plaintiff's constitutional rights by (1) manufacturing evidence against him, including by planting evidence at the scene, (2) claiming to prosecutors that plaintiff had previously admitted to being a "drug dealer," (3) providing false information in the police report and other documents, (4) providing false information to federal prosecutors in order to wrongfully and unconstitutionally deprive plaintiff of his freedom, (5) framing plaintiff for a crime he did not commit and obtaining his conviction, and (6) allowing plaintiff to languish in prison despite his knowledge that plaintiff did not commit the crime alleged.  Am. Compl. ¶¶ 51(a)-(g).

The Court considers the allegations in the Amended Complaint concerning Garrett's trial testimony to be largely background information that helps to explain what happened to plaintiff and led to this lawsuit.  While plaintiff cannot base a § 1983 claim on Garrett's trial testimony, see Briscoe, 460 U.S. at 335, he does not appear to do so, and instead asserts that other conduct by Garrett violated his constitutional rights.  Accordingly, this aspect of Garrett's motion to dismiss should be denied.  Prior to trial, Garrett may ask the Court to revisit this issue through a motion in limine or proposed jury instruction, if necessary.

### B.  *Abuse of Process - Count VII*

Defendants Sharp and Garrett move to dismiss Count VII on the grounds that plaintiff has failed to allege sufficient facts to support a claim for abuse of process.  Defendants state that to prove a claim for abuse of process, a plaintiff must show:  (1) the defendant made an improper, illegal, perverted use of process, which use was neither warranted nor authorized by the process; (2) the defendant had an illegal purpose in doing so; and (3) damage resulted, citing Crow v. Crawford & Co., 259 S.W.3d 104, 116 (Mo. Ct. App. 2008).  Defendants state that the Amended Complaint does not distinguish between the conduct of Sharp and Garrett, makes the conclusory statement that they "abused legal process . . . for an unlawful purpose," Am. Compl. ¶ 97, and provides "absolutely

13

no information or factual support as to what Defendant [Sharp and Garrett's] 'unlawful' or 'ulterior' purpose was." Sharp's Mem. Supp. Mot. Dismiss at 5; Garrett's Mem. Supp. Mot. Dismiss at 9. Defendants contend that plaintiff has only provided a formulaic recitation of a cause of action for abuse of process, and as a result dismissal is required.

Plaintiff responds that the test concerning abuse of process is whether the process was used to accomplish some end which is outside the regular purview of the process, citing Ritterbusch v. Holt, 789 S.W.2d 491, 492 n.1 (Mo. 1990) (en banc). Plaintiff states that he has alleged the defendants made illegal and improper uses of legal process, including preparing a fraudulent affidavit in support of their application for a search warrant, planting and manufacturing evidence against him, providing false or misleading information in the police report and to federal prosecutors, and testifying falsely at trial. Am. Compl. ¶ 96. Plaintiff states that he has alleged defendants had an improper purpose in their misuse of legal process when they "used legal process through their authority as police officers to frame Plaintiff for a crime he did not commit, rather than for legitimately investigating and prosecuting criminal acts." Id. ¶ 98. Plaintiff asserts that this is clearly an "end" that is outside the regular purview of the legal process afforded to police officers in investigating a crime.

Sharp and Garrett reply that plaintiff's opposition fails to identify any allegations in his complaint that provide any factual enhancement to his "naked" recitation of the elements of a claim for abuse of process. Sharp and Garrett, however, do not provided analysis of the relevant facts or discuss any illustrative authority to support their assertion.

The Amended Complaint alleges that former police officers Sharp and Garrett engaged in concerted activities that comprised a conspiracy to plan, organize and carry out corrupt activities, and each took specific action that included framing individuals for crimes using manufactured

evidence; suppressing and destroying exculpatory evidence; stealing cash, contraband and other property; and accusing individuals of crimes they did not commit in an effort to extort money from those individuals or to deflect from their corruption.  Am. Compl. ¶ 21.  Plaintiff alleges that the wrongful and illegal investigation and prosecution targeting him was a direct result of this ongoing corruption by Sharp and Garrett.  Id. ¶ 23.

An action for abuse of process can lie when there is "any unjustified criminal prosecution . . . in which legal process is used for an end other than that of the proceeding itself."  W. Page Keeton, et al., Prosser and Keeton on Torts 898 (5th ed. 1984). The Court finds that plaintiff has pleaded more than mere label and conclusions, and instead has pleaded sufficient facts relating to actions taken by Sharp and Garrett that may constitute abuse of process.  The language of the Amended Complaint that defendants assert is merely conclusory, that they "used legal process through their authority as police officers to frame Plaintiff for a crime he did not commit, rather than for legitimately investigating and prosecuting criminal acts."  Am. Compl. ¶ 97, is not merely conclusory.  The complaint alleges specific facts concerning the acts that are asserted to constitute abuse of process, and alleges that these acts were done as part of Sharp and Garrett's corrupt conspiracy to frame innocent people, steal cash, contraband and other property, and falsely accuse people of crimes in order to extort from them.

This aspect of defendants Sharp and Garrett's motions to dismiss should therefore denied.

C.  *Statute of Limitations - Count VII*

Sharp and Garrett also move to dismiss Count VII, plaintiff's state law claim for abuse of process, on the basis that the applicable statute of limitations has expired.  Defendants state that under Missouri law, an action for abuse of process comes within the five-year general statute of limitations applicable to personal injuries, § 516.120(2), see Corley v. Jacobs, 820 S.W.2d 668, 672

(Mo. Ct. App. 1991), and that the statute begins to run from the termination of the acts that constitute the alleged abuse, not from the completion of the action in which the process issued, citing Steinhilber v. Lake Winnebago Home Owner's Ass'n, 965 F.2d 602, 604 (8th Cir. 1992). Defendants state that the last event plaintiff complains of as constituting abuse of process is their false testimony at his criminal trial in June 2006. Defendants assert that plaintiff's cause of action for abuse of process would therefore have arisen in June 2006 and expired in June 2011, seventeen months prior to the commencement of this action, so Count VII should be dismissed as barred by the statute of limitations.

Plaintiff responds that his abuse of process claim did not accrue until the time his conviction was vacated, because the claim would have impugned the conviction. Plaintiff contends that Corley and Steinhilber do not address the application of the abuse of process statute of limitations in the context of a claim by an exonerated prisoner where the abuse of process resulted in a wrongful conviction, and therefore provide little guidance. Plaintiff states that in the context of civil rights claims arising from wrongful convictions, the Supreme Court has held that a claim for damages for an unconstitutional conviction or imprisonment, or for other actions whose unlawfulness would render a conviction or sentence invalid, does not accrue until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, citing Heck v. Humphrey, 512 U.S. 477 (1994), and Wallace v. Kato, 549 U.S. 384, 393 (2007). Plaintiff states that any claim for abuse of process would have necessarily implied the invalidity of his conviction, and therefore would have been barred by Heck.

In the alternative, plaintiff argues that his abuse of process claim would have been barred by the Missouri doctrines of res judicata and collateral estoppel until such time as the conviction was

overturned, citing Adams v. VanWormer, 892 S.W.2d 655 (Mo. Ct. App. 1994) (in civil lawsuit against police officer and witness involved in criminal trial, convicted murderer was collaterally estopped from raising issues in civil action that had been decided against him in the earlier criminal trial).  Plaintiff states that under these doctrines, he would have been barred from asserting his abuse of process claim while his conviction was in effect, as he could not bring a claim alleging that Sharp and Garrett abused legal process and thereby caused his conviction without necessarily and impermissibly challenging the validity of that conviction.  Plaintiff argues that if defendants are correct and he cannot bring an abuse of process claim now, after the conviction has been set aside, then there was no five-year period during which the claim could ever have been brought, and he loses his cause of action without the benefit of any limitations period.  Plaintiff states that because he could not bring this claim until the bar of his conviction was removed, his claim was filed within five years of the conviction being set aside, and therefore is timely.

Plaintiff also argues that abuse of process can constitute a "continuing tort" or "continuing wrong" under Missouri law, citing Davis v. Laclede Gas Co., 603 S.W.2d 554, 556 (Mo. 1980) (en banc) ("If . . . the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit."); and Guirl v. Guirl, 708 S.W.2d 239, 247 (Mo. Ct. App. 1986) (filing and *maintaining* a petition constituted abuses of process). Plaintiff states that he alleges Sharp and Garrett "allow[ed] Plaintiff to languish in prison for over 5 years and 3 months, despite Defendants' knowledge that Plaintiff did not commit the crime alleged."  Am. Compl. ¶ 51(g).  Plaintiff contends that Sharp and Garrett could have come forward and told the truth at any time during his incarceration but did not, and as a result the term of his

17

incarceration constitutes a continuing wrong and the limitations period for his abuse of process claim was tolled during his incarceration.

In reply, Sharp and Garrett argue that <u>Heck</u> concerned a prisoner seeking damages in a § 1983 suit, and plaintiff fails to explain how a Supreme Court decision regarding the accrual of a § 1983 action would have any bearing on the accrual of a claim for abuse of process under Missouri law. Defendants contend that plaintiff's alternative theory of a continuing tort fails because statutes of limitation are favored under Missouri law and any exceptions must be strictly construed, <u>Graham v. McGrath</u>, 243 S.W.3d 459, 464 (Mo. Ct. App. 2007), and plaintiff bears the burden to show that he strictly comes within a claimed exception. <u>Id.</u> Defendants concede that plaintiff's action for abuse of process might have been subject to a collateral estoppel defense, but assert this does not save the untimely cause of action because plaintiff provides no authority that application of the doctrine results in the statute of limitations being tolled. Defendants conclude that because claims for abuse of process are subject to a five-year limitations period, Count VII is time barred and must be dismissed.

The Eighth Circuit has explained, "Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." <u>Jessie v. Potter</u>, 516 F.3d 709, 713 (8th Cir. 2008). "A defendant does not render a complaint defective by pleading an affirmative defense[.]" <u>Id.</u> Thus, "As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." <u>Joyce v. Armstrong Teasdale, LLP</u>, 635 F.3d 364, 367 (8th Cir. 2011) (quotation marks and quoted case omitted). As a result, the inquiry for purposes of the instant motion is whether plaintiff's Amended Complaint establishes that his abuse of process claim is barred by the statute of limitations.

18

Because this is a state law claim, the Court applies Missouri law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel. See Walker v. Barrett, 650 F.3d 1198, 1203-04 (8th Cir. 2011). The parties agree that the five-year statute of limitations of § 516.120(2) applies to a claim for abuse of process. See Corley, 820 S.W.2d at 672. In Missouri, the statute of limitations on an abuse of process claim "begins to run[] from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." Id.

The complaint alleges that the actions constituting abuse of process occurred in 2003 and 2006, but also alleges that plaintiff was imprisoned based solely on the false evidence manufactured and provided by Sharp and Garrett, and his conviction was not overturned until 2011. The complaint further alleges that plaintiff was unable to bring his claims until his conviction was overturned because each claim would have impugned his then-existing conviction. These allegations from the complaint could plausibly support plaintiff's collateral estoppel argument raised in opposition to the motion to dismiss, and therefore the complaint itself does not entirely foreclose the possibility that plaintiff can successfully rebut defendants' statute of limitations defense. In addition, as plaintiff asserts, Missouri recognizes the continuing tort or continuing wrong doctrine, see Davis v. Laclede Gas Co., 603 S.W.2d at 556, which could plausibly apply here.[5]

Defendants argue plaintiff has not cited any Missouri cases holding that even if he was collaterally estopped from bringing suit, this would have any effect on the statute of limitations. This argument fails to recognize that in the context of a motion to dismiss under Rule 12(b)(6),

---

[5]     There is no indication that Missouri courts have adopted the analytical framework of Heck v. Humphrey, 512 U.S. at 486-87, for analyzing the accrual of state law claims. Cf. Parish v. City of Elkhart, 614 F.3d 677, 681 (7th Cir. 2010) (stating that the Indiana Court of Appeals had adopted the Heck framework with respect to the accrual of state law claims for false imprisonment).

dismissal on the basis of the statute of limitations is proper only where the complaint itself establishes the defense.  See Joyce, 635 F.3d at 367.  The complaint does not so establish in this case.  The Court also notes that defendants, as the moving parties, have not cited any Missouri cases to establish that collateral estoppel would not have an effect on the statute of limitations.

Based on the foregoing, defendants Sharp and Garrett's motions to dismiss plaintiff's abuse of process claim in Count VII as untimely should be denied.

### D.  *Malicious Prosecution - Count V*

Defendant Garrett moves to dismiss Count V of the Amended Complaint on the basis that it fails to state a claim upon which relief can be granted against him.  Garrett states that to establish a claim of malicious prosecution under Missouri law, a plaintiff must show:  (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) activation of the defendant's conduct by malice; and (6) damage to the plaintiff; citing Perry v. Dayton Hudson Corp., 789 S.W.2d 837, 840 (Mo. Ct. App. 1990).  Garrett states that all six elements must be proved and a failure to prove any one requires the dismissal of the claim.  Id. at 841.  Malicious prosecution actions are not favored and therefore courts require strict proof of each element.  Id.

Garrett asserts that plaintiff fails to allege facts to support the second element of malicious prosecution, instigation.  Garrett states, "Instigation requires that there be some affirmative action by way of encouragement, advice, pressure, or the like in the institution of the prosecution," Crow v. Crawford & Co., 259 S.W.3d 104, 115 (Mo. Ct. App. 2008), and that simply triggering an investigation is insufficient to establish that a defendant instigated the prosecution, citing Zike v. Advance Am., 2010 WL 1816747, at *7 (E.D. Mo. May 3, 2010).

Garrett states that the Amended Complaint asserts he instigated plaintiff's prosecution, Am. Compl. ¶ 81, but in support alleges only that Garrett "wrongfully convinced federal prosecutors that Plaintiff was an 'admitted drug dealer.'" Id. Garrett contends this is a "threadbare recital" of the elements of a claim for malicious prosecution and fails to provide more than a mere possibility he may be liable. Garrett also asserts that plaintiff's own allegations cut against his claim for malicious prosecution, because the Amended Complaint alleges Garrett's participation in plaintiff's arrest and booking was limited to the tangential actions of "perform[ing] surveillance" and "perform[ing] an interview" of plaintiff at the police station following his arrest. Id. ¶ 45. Garrett adds that plaintiff's allegation he "wrongfully convinced federal prosecutors" that plaintiff was an admitted drug dealer is contradicted by plaintiff's admission that federal prosecutors were provided information regarding plaintiff's 1995 Alford plea prior to trial from a certified copy of the sentence and judgment. Id. ¶ 30.

Plaintiff responds that under Missouri law, to instigate also means "to stimulate or goad to an action, especially a bad action." Crow, 259 S.W.3d at 114 (quoted case omitted). Plaintiff states that the Amended Complaint alleges Sharp and Garrett's conspiracy to frame him was the sole cause of the prosecution, and that Garrett was instrumental in manufacturing the case against him. Plaintiff quotes the factual allegations of paragraphs 23-13, 27-28 and 44-48 of the complaint, and contends those facts allege that Garrett was more than a "tangential" figure in the prosecution, and show that Garrett, together with Sharp, instigated the prosecution against him.

Garrett replies that plaintiff's only allegations of actual conduct by him are that he was present at the scene of the arrest, performed surveillance of the premises, interviewed plaintiff at the station following his arrest, informed prosecutors of a prior arrest of plaintiff, and testified at plaintiff's trial. Garrett argues that these allegations fall well short of qualifying as "encouragement,

21

advice [or] pressure" to initiate a prosecution.  Garrett contends that, at best, plaintiff alleges that he provided one piece of information to prosecutors, but does not explain how one alleged conversation regarding a prior arrest could be construed as "encouraging" plaintiff's prosecution.

"Where . . . an informant knowingly gives false or misleading information or directs or counsels officials in such as way as to actively persuade and induce the decision to prosecute, the informant may be liable for malicious prosecution."  J. D. Lee & Barry A. Lindahl, <u>Modern Tort Law Liability & Litigation</u> § 40:4 (2d ed. 2006).  This is the rule in Missouri as well:  "Merely providing honest information from which a prosecution ensues is not instigation, although liability may arise from supplying false information to the prosecuting official."  <u>Crow</u>, 259 S.W.3d at 115. The instigation element of malicious prosecution has been described as follows:

> The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause.  But the defendant cannot be held responsible unless the defendant takes some active part in instigating or encouraging the prosecution.  The defendant is not liable merely because of approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even through the testimony be perjured . . . .  On the other hand, if the defendant advises or assists another person to begin the proceeding, ratifies it when it is begun in defendant's behalf, or takes any active part in directing or aiding the conduct of the case, the defendant will be responsible.

<u>Prosser and Keeton on Torts</u> 872.

The Amended Complaint alleges that as part of a corrupt scheme, Sharp and Garrett orchestrated plaintiff's arrest without probable cause, and that Garrett (1) was present and performed surveillance at the scene of plaintiff's arrest, interviewed plaintiff after his arrest, and claimed to prosecutors that plaintiff admitted in 1995 that he was a drug dealer, Am. Compl. ¶¶ 19, 27, 44-45; (2) falsely informed prosecutors that plaintiff had "inexplicably admitted during questioning that he was a 'drug dealer' during the 1995 arrest," and prosecutors relied on this evidence in making the determination that they believed plaintiff was a drug dealer and in possession of narcotics on

December 9, 2003, id. ¶ 28; (3) previously attempted to extort money from plaintiff and frame him for a drug crime in 1995, id. ¶ 29; (4) after plaintiff's arrest, told plaintiff he knew that plaintiff lived in Ferguson, Missouri for approximately two years and did not live at 5984 Cates where he was arrested; id. ¶ 44; (5) interviewed plaintiff at the police station after his arrest and encouraged plaintiff to sign a consent form to search the premises in an attempt to validate the search and falsely establish that plaintiff lived at or had control of the premises at 5984 Cates and thus had authority to consent to the search, id. ¶ 45; (6) had plaintiff sign a "money disclaimer" during this interview attesting that plaintiff had no knowledge of any money in the house, to ensure that Garrett and other officers could steal and keep any money found in the house; id. ¶ 46; and (7) conferred with Sharp for at least an hour prior to plaintiff's trial; on information and belief to go over the details of Sharp and Garrett's conspiracy, id. ¶ 47.

The Court finds these allegations are sufficient to state a plausible claim of malicious prosecution against Garrett.  The element of instigation is present because plaintiff alleges affirmative action by Garrett to encourage the prosecution, specifically that Garrett acted together with and assisted Sharp in beginning plaintiff's prosecution, and took an active part in encouraging prosecution of the case by telling federal prosecutors that plaintiff had "inexplicably admitted during questioning" following the 1995 arrest that he was a "drug dealer."  Am. Compl. ¶ 28.  Plaintiff also alleges that federal prosecutors relied on Garrett's representation in deciding to pursue plaintiff's prosecution for possession of narcotics on December 9, 2003.  Id.

Garrett is not entitled to dismissal based on statements in the complaint that plaintiff entered an Alford plea to the 1995 charge and that prosecutors had a certified copy of the conviction prior to trial.  Garrett does not explain why the Alford plea requires dismissal of the malicious prosecution claim.  Presumably, the implicit argument is that entry of an Alford plea constitutes admission of

23

the underlying facts in the charging document.  Garrett cites no authority in support of such an argument, however, and therefore the Court rejects it.  See, e.g., Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (refusing to consider an argument on which the moving party "provide[d] no analysis of the relevant law or facts").[6]

Defendant Garrett's motion to dismiss Count V should therefore be denied.

### E.  *False Imprisonment - Count VI*

Finally, defendant Garrett moves to dismiss plaintiff's false imprisonment claim in Count VI on the basis that it fails to state a claim upon which relief can be granted against him.  Garrett states that an action for false imprisonment cannot be based on a mere failure to speak or act, but rather must be based upon some affirmative act instigating the arrest, citing Davis v. Weil Clothing Co., 367 S.W.2d 19, 23 (Mo. Ct. App. 1963).  Garrett argues that the Amended Complaint is devoid of any allegations regarding how he "instigated" plaintiff's arrest, and states that the only factual allegation regarding his conduct prior to the arrest is that he "performed surveillance."  Garrett contends that the allegations against him in Count VI fail to provide any substantive information and thus provide only the sheer possibility of liability, which is inadequate under Iqbal.

Plaintiff's opposition memorandum offers a combined response to Garrett's dismissal arguments concerning the malicious prosecution and false imprisonment counts.  Plaintiff states that under Missouri law, a person can be liable for encouraging, causing promoting or instigating an arrest, citing Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. 2006) (en banc), and whether a person

---

[6]     The Court notes that while an Alford plea results in a conviction and is indistinguishable from other guilty pleas when determining whether a conviction qualifies as a predicate offense to enhance a sentence, United States v. Cover, 703 F.3d 477, 482 (8th Cir. 2013), the Eighth Circuit has stated that an Alford plea is different from other pleas because the defendant pleads guilty without admitting the facts underlying the conviction.  See United States v. Williams, 664 F.3d 719, 722 (8th Cir. 2011).

instigated an arrest is a fact-specific inquiry for which there is no fixed test, citing <u>Smith v. Allied Supermarkets, Inc.</u>, 524 S.W.2d 848, 852 (Mo. 1975) (en banc).  Plaintiff argues that the Amended Complaint's factual allegations, as recited above, are sufficient to state a claim for false imprisonment against Garrett because his and Sharp's conspiracy to frame plaintiff was the sole cause of his arrest.

Garrett replies that the only allegations in the Amended Complaint related to his conduct prior to plaintiff's arrest are that he was present at the scene and performed surveillance, and therefore it is clear that his role was merely as an ancillary figure who was merely present when plaintiff was arrested.  Garrett does not cite any authority in the form of illustrative cases in support of his position.

Under Missouri law, "False imprisonment, also called false arrest, is 'the confinement, without legal justification, by the wrongdoer of the person wronged.'"  <u>Highfill</u>, 186 S.W.3d at 280 (quoting <u>Warrem v. Parrish</u>, 436 S.W.2d 670, 672 (Mo. 1969)).  "A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest."  <u>Id.</u> (citing <u>Day v. Wells Fargo Guard Service Co.</u>, 711 S.W.2d 503, 505 (Mo. 1986) (en banc)).  The term "instigate" has been described in Missouri false arrest and imprisonment cases in various ways:

> "Instigate" means to stimulate or goad to an action.  "Abet," a synonym for "instigate," means "to aid, promote, or encourage the commission of an offense." "Countenance" means to "encourage, favor, approve," its synonyms being "sanction, endorse, support."  But, "to 'countenance' an act means something more than to witness it."

<u>Bergel v. Kassebaum</u>, 577 S.W.2d 863, 867-68 (Mo. Ct. App. 1978) (internal punctuation, citations and quoted cases omitted).  Plaintiff is correct that whether a person instigated an arrest is a fact-specific inquiry for which there is no single test.  <u>Highfill</u>, 186 S.W.3d at 280.  Further, a

plaintiff is entitled to prove that a defendant encouraged, promoted or instigated the arrest by either direct or circumstantial evidence.  Day, 711 S.W.2d at 505.

The instigation element of false imprisonment has been described as follows:

> One who participates in an unlawful arrest, or procures or instigates the making of one without proper authority, will be liable for the consequences; but the defendant must have taken some active part in bringing about the unlawful arrest itself, by some "affirmative direction, persuasion, request or voluntary participation." There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted, or requesting a proper arrest when an officer makes an improper one instead, or swearing to a complaint before a magistrate who turns out not to have jurisdiction.

Prosser and Keeton on Torts 52.

The Amended Complaint alleges that Garrett did more than merely give information to legal authorities or have a tangential role in plaintiff's arrest.  Plaintiff alleges that Sharp and Garrett acted together to frame him – as well as other innocent persons – for a crime he did not commit, in order to steal contraband, cash and other property, extort money, and deflect from Sharp and Garrett's corruption.  Plaintiff alleges that his arrest was a direct result of ongoing police corruption planned, directed and carried out by Sharp, Garrett and other unknown officers, and that Garrett was a "ringleader and instrumental in corrupting other officers."  Am. Compl. ¶ 22.  Plaintiff alleges that Garrett was present at the time of his arrest and provided surveillance of the premises where he was arrested, told plaintiff he would take him downtown and release him without charging him "as long as he agreed not to go back to that house anymore," and indicated to plaintiff that Garrett knew plaintiff did not live at the Cates address; interviewed plaintiff at the station and encouraged him to sign a consent form to search the premises in an effort to validate the search and falsely establish that plaintiff lived at or was in control of the premises and had authority to consent to the search.

The Court finds the Amended Complaint sufficiently alleges facts tending to show that Garrett encouraged, aided, promoted or instigated plaintiff's arrest, and was more than a mere tangential figure.  This aspect of Garrett's motion to dismiss should therefore be denied.

**Conclusion**

For the foregoing reasons, the Board's motion to dismiss Counts V, VI and VII based on sovereign immunity should be granted.  The motions to dismiss filed by defendant Sharp and defendant Garrett should be denied in all respects.  Accordingly,

**IT IS HEREBY ORDERED** that defendants Slay, Battle-Turner, Gray, Lee and Irwin's Motion to Dismiss Counts V, VI and VII of Plaintiff's Amended Complaint is **GRANTED**, and Counts V, VI and VII will be **DISMISSED** as to these defendants.  [Doc. 52]

**IT IS FURTHER ORDERED** that defendant Sharp's Motion to Dismiss is **DENIED**. [Doc. 58]

**IT IS FURTHER ORDERED** that defendant Garrett's Motion to Dismiss is **DENIED**. [Doc. 56]

**IT IS FURTHER ORDERED** that defendants Sharp and Garrett shall file their Answers to the Amended Complaint within the time permitted by the Federal Rules of Civil Procedure.  See Rule 12(a)(4)(A), Fed. R. Civ. P.

An appropriate order of partial dismissal will accompany this Memorandum and Order.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  7th  day of November, 2013.