UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL HOLMES,                )
                               )
           Plaintiff,          )
                               )
     v.                        )          No. 4:12-CV-02333-HEA
                               )
MAYOR FRANCIS G. SLAY,         )
et. al.,                       )
                               )
           Defendants          )

**DEFENDANTS' STATEMENT OF
<u>UNCONTROVERTED MATERIAL FACTS</u>**

Defendants Francis Slay, Jr., Bettye Battle-Turner, Richard Gray,

Jerome D. Lee, and Thomas Irwin ("Board Defendants"), pursuant to Local

Rule 7-4.01.E, hereby submits his Statement of Uncontroverted Material

Facts:

1.     Plaintiff Michael Holmes ("Plaintiff") pled guilty to a felony in

1996. [Exhibit A, Deposition of Michael Holmes, p. 16-17].

2.     In January 1995, officers of the St. Louis Metropolitan Police

Department believed Plaintiff was a crack cocaine dealer selling narcotics

from 1459 Goodfellow. [Exhibit B, Deposition of John Wieter, p. 7; Exhibit C,

Deposition of Robert Froelich, p. 5-6; Exhibit D, Deposition of Bobby Garrett,

p. 10-11].

3.     Based on information obtained during the course of an investigation, a search warrant was obtained for 1459 Goodfellow. [Exhibit B, p. 8].

4.     Several officers, including John Weiter, Robert Froelich and Defendant Garrett, conducted the execution of the search warrant at 1459 Goodfellow. [Ex. C, p. 6].

5.     Plaintiff was placed under arrest at 1459 Goodfellow and taken to a police station. [Ex. B, p. 9].

6.     While at the police station, Officers John Weiter, Robert Froelich and Defendant Garrett conducted an interview of Plaintiff. [Ex. B, p. 12, Ex. C, p. 8; Ex. D, p. 19; Ex. E, p. 10].

7.     During that interview, Plaintiff admitted that he was a narcotics dealer. [Ex. B, p. 13, Ex. C, p. 8-9; Ex. D, p. 20; Ex. E, p. 10].

8.     Plaintiff was charged with and convicted of a narcotics-related crime as a result of that arrest. [Ex. A, p. 16-17].

9.     In December 2003, Defendant Shell Sharp ("Sharp") received information that Plaintiff was selling crack cocaine from 5894 Cates. [Exhibit F, Deposition of Shell Sharp, p. 41].

10.     Based on that information, Sharp and Officer Alan Ray conducted surveillance of 5894 Cates. [Ex. F, page 44; Exhibit G, Declaration of Alan Ray, p. 1].

11.     During that surveillance, Sharp and Officer Ray witnessed several hand-to-hand transactions involving Plaintiff. [Ex. F, p. 45; Ex. G, p. 1-2].

12.     During the hand-to-hand transactions, Plaintiff was holding a brown paper bag. [Ex. G, p. 2].

13.     Based on the information from the surveillance, Sharp and Officer Ray decided to attempt a consent search of 5894 Cates. [Ex. F, page 49; Ex. G, p. 2].

14.     Sharp and Officer Alan Ray received the consent of a resident of 5894 Cates to conduct a search of the residence. [Ex. F, p. 49; Ex. G, p. 2].

15.     During that search, Plaintiff was observed standing on the stairway holding a brown paper bag. [Ex. F, p. 55; Ex. G, p. 2; Exhibit H, Deposition of James Mowry, p. 6-7].

16.     After he observed the officers, Plaintiff dropped the brown paper bag and fled up the stairs. [Ex. F, p. 55; Ex. G, p. 2; Ex. H, p. 6-7].

17.     A search of the bag revealed that it contained crack cocaine. [Ex. H, p. 3; Exhibit I, Incident Report, p. 12].

3

18.    In addition, the officers found a significant amount of paraphernalia used in the manufacture and sale of crack cocaine, including an M1 carbine, a shotgun, currency, a scale and instruments with a white residue on them. [Ex. I, p. 6-10].

19.    Plaintiff's fingerprint was found on the paraphernalia. [Ex. A, p. 221].

20.    Plaintiff was charged with and convicted of several counts related to the items seized on December 9, 2003. [Ex. A, p. 16].

21.    The SLMPD employs approximately 1300 police officers. [Ex. J, Affidavit of Captain John Hayden, ¶ 3].

22.    The SLMPD was made aware in the spring of 2008 of an FBI investigation into Garrett. [Ex. J, ¶ 8].

23.    The SLMPD cooperated with the FBI investigation into Garrett and opened its own internal affairs investigation regarding Garrett. [Ex. J, ¶9].

24.    Defendant Garrett was indicted by a federal grand jury on December 11, 2008. [Ex. K, PACER Print Out of Case  4:08-cr-00703-ERW-1].

25.    As a result of the federal grand jury indictment, the Internal Affairs Division ('IAD") of the SLMPD charged Garrett with Conduct Unbecoming an Officer. [Ex. J, ¶12].

4

26.     Garrett was detached to a desk job on October, 22, 2008. [Ex. J, ¶10].

27.     Garrett refused to give a statement to SLMPD IAD officers and retired from the SLMPD on January 5, 2009. [Ex. J, ¶13].

28.     The charge against Garrett of Conduct Unbecoming an Officer was sustained. [Ex. J, ¶12].

29.     Garrett had only one prior sustained Internal Affairs complaint, for Violation of Department Procedures in 1997. [Ex. L, SLMPD Internal Affairs Charges Summary for Bobby Garrett, p. 2].

30.     In July of 2008, the SLMPD IAD was notified by federal prosecutors that the legitimacy of recent search warrant affidavits of Defendant Shell Sharp had been called into question.[Ex. J, ¶14].

31.     Captain John Hayden of the SLMPD IAD initiated an audit of Sharp's search warrant affidavits from February 2007 to July 2008. [Ex. J, ¶15].

32.     As a result of that audit, charges of False Reporting were filed against Defendant Sharp on April 13, 2009. [Ex. J, ¶16].

33.     Sharp was detached to a desk on February 23, 2009 after his return from Limited Duty status. [Ex. J, ¶17].

5

34.    Sharp refused to be interviewed by SLMPD IAD officers when questioned about his search warrants. [Ex. J, ¶18].

35.    As a result of Sharp's refusal to answer questions, the IAD could not verify the validity of Confidential Informants contained in Sharp's search warrant affidavits. [Ex. J, ¶19].

36.    As a further result of Sharp's refusal to answer IAD officers' questions, the allegation of False Reporting could not be proven by a preponderance of the evidence and was not sustained. [Ex. J, ¶20].

37.    Sharp resigned from the SLMPD on June 16, 2009. [Ex. J, ¶21]

38.    From 1990-2003, Sharp's only sustained IAD complaints were for Violation of Department Policies and Improper Performance of Duty.  [Ex. M, SLMPD Internal Affairs Charges Summary for Shell Sharp, p. 1-3].

39.    SLMPD fully investigates all Internal Affairs complaints. [Ex. J, ¶5; Exhibit N, Affidavit of Lt. Col. Paul Nocchiero, ¶6].

40.    IAD investigations involve interviewing the complainant, the accused officer, any witnesses and reviewing any physical or video evidence. [Ex. J, ¶ 5; Ex. N, ¶6].

41.    The burden of proof in an IAD investigation is a preponderance of the evidence. [Ex. J ¶6, Ex. N, ¶7].

42.     Per SLMPD policy, records of sustained IAD complaints against an officer are kept for a period of five years, after which all documents except the face sheet are purged. [Ex. O, Section VII of Special Order 6.02, p. 1].

43.     Per SLMPD policy, records of not sustained IAD complaints against an officer are kept for a period of one year, after which all documents except the face sheet are purged. [Ex. O, Section VII of Special Order 6.02, p. 1].

44.     Defendant Garrett joined the SLMPD in 1989. [Ex. D., p. 9].

45.     Defendant Sharp joined the SLMPD in 1989. [Ex. F, p. 13].

46.     In 1989 the SLMPD Police Academy training was four months long. [Exhibit P, Affidavit of Daniel Coll, ¶4].

47.     Since at least 1980, SLMPD Police Academy training has contained blocks of instruction in multiple areas, including constitutional law, criminal investigations, patrol, traffic, juvenile, first aid, physical fitness, Special Orders and the Police Manual and report writing. [Ex. P, ¶5].

48.     The constitutional law block of the SLMPD Police Academy included instruction on the U.S. Constitution, including the Fourth Amendment, search and seizure, search warrants, search warrant affidavits and other related materials. [Ex. P, ¶6].

7

49.     The criminal investigation block of the SLMPD Police Academy included instruction on confidential informants, narcotics, how to apply for and execute search warrants and courtroom testimony. [Ex. P ¶7].

50.     Since at least 1980, part of the Academy training involved active Narcotics officers, as well as Officers with experience in narcotics investigations, speaking to Academy recruits regarding narcotics investigations. [Ex. P, ¶8].

51.     Defendant Bobby Garrett attended training every year from his graduation from the Academy until his resignation from the SLMPD. This training included Courtroom Procedures (10/11/93), Ethics Training (2/23/1995), Search Warrant Preparation (11/08/1996), Missouri Highway Patrol Surveillance Technology (3/28/1997) and Racial Profiling (4/7/1992, 9/16/2002, 8/22/2003, 8/18/2004, 11/28/2005, 11/06/2006, 12/06/2007, 4/15/2008). [Exhibit T, Garrett Training Summary].

52.     Defendant Shell Sharp attended training every year from his graduation from the Academy until his resignation from the SLMPD. These training included Cultural Diversity (2/20/1992), Gangs and Drugs (7/14/1992), Ethics Training (4/05/1995), Search Warrant/Raid Training (8/29/1995), Search Warrant Preparation (11/08/1996), Surveillance Course

(04/29/1997), and Racial Profiling (5/22/2002, 10/20/2003, 10/02/2006, 12/14/2007). [Exhibit U, Sharp Training Summary].

53.    All SLMPD officers are required to review new and updated special orders and manual sections when they are published. [Ex. N, ¶10].

54.    Officers must sign, either electronically or in writing, to denote that they have received and reviewed new or updated special orders and manual sections. [Ex. N, ¶11].

55.    Rule 7 of the SLMPD police manual dictates that all officers shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in general. [Ex. S, Rule 7 of SLMPD Police Manual, Section 7.004; Exhibit W, Board Defendants Answers to Plaintiff's Interrogatories, ¶7].

56.    Examples of conduct that would violate Rule of the SLMPD manual includes but is not limited to: conviction of a crime, neglect of duty, conduct detrimental to the public peace or welfare, failing to conduct a proper investigation and accepting bribes. [Ex. S, Sect. 7.004].

57.    If there had been a sustained IAD complaint against an officer for a serious offense such as theft, the recommendation and result would have been termination. [Ex. E, Deposition of Lt. Colonel Paul Nocchiero, p. 75-6. Ex. V, Deposition of Captain John Hayden, p. 57].

Respectfully submitted,

**CHRIS KOSTER**
Attorney General


*/s/ Christopher Hoell*
Christopher Hoell, # 54011
Assistant Attorney General
P.O. Box 861
St. Louis, Missouri 63188
(314)340-7861
Fax: (314)340-7029
Chris.Hoell@ago.mo.gov
*Attorneys for Defendants Slay, Battle-*
*Turner, Gray, Irwin and Lee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties.


*/s/ Christopher Hoell*
Assistant Attorney General