# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MICHAEL HOLMES,      )
                           )
      Plaintiff,      )
                           )
      v.                  )        Case No. 4:12CV2333 HEA
                           )
FRANCIS G. SLAY, et al.,   )
                           )
      Defendants.    )

## OPINION, MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 matter is before the Court on separate motions for summary judgment filed by defendants Bobby Lee Garrett and Shell Sharp, [Doc. No.'s 105 and 108, respectively]. Plaintiff opposes the motions and the motions are fully briefed. For the following reasons, defendants Garrett and Sharp's motions for summary judgment will be granted in part, denied in part and denied in part as moot.

### Facts and Background

This action was filed on December 17, 2012 by Plaintiff against the members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department (collectively the "Board") and two former St. Louis police officers, defendants Garrett and Sharp. Plaintiff alleges that his federal civil rights

were violated when he was arrested, convicted and imprisoned for a period of over five years based on false evidence manufactured by defendants Garrett and Sharp.

Specifically, Plaintiff alleges that Plaintiff was falsely accused by Sharp of being in possession of approximately 200 grams of cocaine base. Sharp claimed that a confidential source advised him that "Big Mike," a 270 pound black male wearing a yellow jumpsuit, was selling cocaine from the residence at 5894 Cates, St. Louis, Missouri. Sharp claimed that he established surveillance of the premises in an unmarked vehicle across the street from the residence, during which he observed three "hand-to-hand" transactions between Plaintiff and two unidentified black males. The police report did not identify the vehicles, the license plates or any further description of these two black males. Sharp did not radio any of the other nine officers on standby at a nearby location to advise them about the vehicles suspected to be departing with narcotics. The police report described a transaction between Mr. Holmes and a third black male which Sharp later admitted never happened and/or was a typographical error.

Plaintiff further alleges that Sharp's false claims in the police report and to federal prosecutors regarding these transactions, in order to obtain the wrongful prosecution and conviction of Plaintiff, is part of a pattern whereby Sharp, Garrett and others routinely falsified information in order to obtain warrants, including

falsifying information purportedly given by confidential informants and falsifying observations of "transactions" purportedly made during surveillance.

Sharp further claimed in the police report and to federal prosecutors that he radioed the standby officers to come to the scene, and approached the residence at 5984 Cates to do a knock and talk. The door was opened by 85 year old Maetta Griffin, Plaintiff's grandmother, to whom Sharp claimed he told about the information from the alleged confidential informant and the transactions he witnessed during surveillance, and who then gave consent to search the residence.

In the police report, Sharp claimed that when the officers entered the house they saw Plaintiff coming down the stairs. At trial, Sharp testified that he did not see Plaintiff until they reached the second floor landing, where they saw Plaintiff coming down the stairs carrying a brown paper bag. Sharp claimed falsely that Plaintiff dropped this bag in plain sight of the officers and then ran back upstairs. Sharp claimed that Officer Ray detained Plaintiff while Sharp looked into the bag to determine whether it contained controlled substances, and found cocaine.

Sharp claimed falsely that Plaintiff told him he lived on the third floor, and even identified his "bedroom" to the officers. Sharp claimed in the police report and to federal prosecutors that after searching the room identified by Plaintiff, the officers recovered a roasting pan, glass beakers, a scale, some heroin, $4000 from an open safe, baggies, a shotgun and two bags of rubber bands. The officers did not

search the rest of the house. Sharp admitted that there were two other black males present in the house that day, but could not recall what they looked like or how they were dressed. The police report indicated that both of these men were in the house. Sharp did not ask those people which bedrooms they lived in or otherwise interview them.

Plaintiff alleges that Sharp's claims were false. As in other, similar cases, Sharp manufactured evidence in order to frame Plaintiff for possession of the crack cocaine. Plaintiff did not have or "throw down" a brown bag on the stairs in front of the officers. He was never in possession of the weapons, drugs or other paraphernalia admitted into evidence at his trial.

While still at the home after he was arrested, Defendant Garrett told Plaintiff that he was going to take him downtown and would release him without charging him "as long as he agreed not to go back to that house anymore." Detective Garrett indicated to Plaintiff that he was well aware that Plaintiff had lived in Ferguson for approximately two years and did not reside at his Grandmother's residence where he was arrested.

In addition, in an effort to further carry out Defendants' corrupt conspiracy, Officer Garrett performed surveillance at the scene of the arrest and performed an interview of Plaintiff at the station after his arrest. At this time he encouraged Plaintiff to sign a consent form to search the premises where Plaintiff had been

arrested at his Grandmother's residence, which Plaintiff refused to do. Garrett did this in an attempt to validate the search and falsely establish that Plaintiff lived at or was in control of the premises and therefore had authority to consent to the search.

During the interview Defendant Garrett also had Plaintiff sign a "money disclaimer" attesting that Plaintiff had no knowledge of any monies in the house. Garrett did this in furtherance of the officers' corrupt conspiracy, to ensure that Garrett, Sharp and other officers could steal and keep any money found inside the house.

While in the Federal Court house waiting for his trial to begin, Plaintiff also observed Defendants Garrett and Sharp go into a conference room where Garrett and Sharp remained for at least an hour. On information and belief, the purpose of this meeting was to go over the details of Defendants' conspiracy and ensure that it was completed successfully.

Defendant Garrett's false assertion to federal prosecutors that Plaintiff was an 'admitted drug dealer' was crucial in their decision to pursue the prosecution of Plaintiff arising from the incident on December 9, 2003, and thus instrumental and material in carrying out the malicious prosecution of Plaintiff, ultimately resulting in his illegal and unconstitutional imprisonment. Furthermore, Garrett at all times

acted with and coordinated the conspiracy with Defendant Sharp and other officers of the Department to obtain Plaintiff's wrongful conviction.

Plaintiff also alleges that the Board had a policy, or pervasive custom and practice, of reliance on manufactured evidence, and that it failed to train, supervise, control, instruct, or discipline the officers under its control in various respects. Plaintiff alleges that as a result of Garrett and Sharp's conduct, he was found guilty by a jury of possession of more than 50 grams of a substance containing cocaine base with intent to distribute and possession of firearms in furtherance of a drug trafficking crime. Plaintiff was sentenced to 300 months in prison.

Plaintiff alleges that Defendant Garrett was indicted on federal corruption charges related to his official duties and later pleaded guilty to federal criminal charges of theft, conspiracy and making false statements and admitted planting evidence, arresting an innocent man to cover up the theft of money and involvement in falsifying court documents, lab forms and police reports. See United States v. Garrett, No. 4:08CR703 ERW (E.D. Mo.). Plaintiff alleges that the investigation also led to defendant Sharp leaving the police department "under charges" of fraudulently concocting affidavits in support of search warrants.

Plaintiff asserts federal civil rights claims against Garrett, Sharp and the Board pursuant to 42 U.S.C. § 1983 and supplemental state law claims against

Garrett and Sharp for malicious prosecution, wrongful imprisonment and abuse of process.

## Summary Judgment Standard

The standard applicable to summary judgment motions is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy*

*Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see *Crossley v. Georgia-Pacific Corp*., 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

The Court is mindful that in reviewing a motion for summary judgment, it must view the facts in the light most favorable to the non-moving party, give the non-moving party the benefit of any inferences that can logically be drawn from those facts, *Matsushita*, 475 U.S. at 587, and resolve all conflicts in favor of the non-moving party. *Robert Johnson Grain Co. v. Chemical Interchange Co*., 541 F.2d 207, 210 (8th Cir. 1976).

## Discussion

The parties have each presented their respective version of the facts giving rise to this action. Plaintiff disputes the overwhelming majority of Defendants' facts, and Defendants dispute the overwhelming majority of Plaintiff's facts.

In Count I of the Amended Complaint, Plaintiff alleges that Defendants Garrett and Sharp violated his constitutional rights by the following acts: a) Manufacturing evidence against Plaintiff, including planting evidence at the scene; b) Sharp's false statements in the police report and to federal prosecutors, including that Plaintiff dropped the bag of crack cocaine and admitted to residing in the residence; c) Garrett's claim to prosecutors that Plaintiff had previously admitted to being a "drug dealer"; d) Providing false information in the police report and in other documents and reports prepared pursuant to Defendants' duties with the Department; e) Providing false information to federal prosecutors in order to wrongfully, illegally and unconstitutionally deprive Plaintiff of his freedom; f) Framing Plaintiff for a crime he did not commit and obtaining his conviction; and g) Allowing Plaintiff to languish in prison for over 5 years and 3 months, despite Defendants' knowledge that Plaintiff did not commit the crime alleged. Count I asserts that plaintiff was incarcerated without due process of law and that Defendants Garret and Sharp's actions violated plaintiff's constitutional rights "including his due process rights to a fair trial and his right to discovery of exculpatory evidence, and other rights preserved under the Fourth, Fifth and

Fourteenth Amendments." The Defendants move for summary judgment on all of Plaintiff's claims in Count I.

Plaintiff alleges the defendants planted evidence at the scene, provided false information in the police report, and provided false information to federal prosecutors in order to unconstitutionally deprive plaintiff of his freedom.

It is elementary that a police officer's use of false evidence to secure a conviction violates a defendant's substantive due process rights. *White v. Smith*, 696 F.3d 740, 754 (8th Cir. 2012) (citing *Wilson v. Lawrence County*, 260 F.3d 946, 954 (8th Cir. 2001), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The Eighth Circuit has "recognized that a plaintiff can make out a violation of substantive due process by 'offer[ing] evidence of a purposeful police conspiracy to manufacture, and the manufacture of, false evidence.'" *White*, 696 F.3d at 754 (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)). Plaintiff's allegations that Defendants manufactured false evidence against him are properly analyzed under the rubric of substantive due process.

"To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may

fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Whether conduct shocks the conscience is a question of law. *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc). "In order to 'shock the conscience,' it is not enough that the government official's behavior meets the 'lowest common denominator of customary tort liability.'" *White v. Smith*, 696 F.3d at 757 (quoting *Lewis*, 523 U.S. at 848-49). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. "Only the most severe violations of individual rights that result from the 'brutal and inhumane abuse of official power' rise to this level." *White v. Smith*, 696 F.3d at 757-58 (quoted case omitted). Relevant to the allegations in this case, the Eighth Circuit has stated, "There can be little doubt that intentionally manufacturing false evidence to convict a criminal defendant is the sort of 'brutal and inhumane abuse of official power' that shocks the conscience." *Id*. at 758.

Different standards of culpability can apply to determine whether a defendant's conduct may be considered conscience shocking because "a wide variety of official conduct may cause injury." *Folkerts v. City of Waverly, Ia*., 707 F.3d 975, 980 (8th Cir. 2013) (quoted case omitted). Where the "state actors have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly." *Wilson*, 260 F.3d

at 956 & n.9 (noting that the "reckless standard normally contains a subjective component similar to criminal recklessness."). The Eighth Circuit has also described the recklessness standard as "evinc[ing] deliberate indifference." *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 831 (8th Cir. 2005).

In establishing a violation of his substantive due process rights based on the manufacture of false evidence against him, Plaintiff must show that Garrett and Sharp acted intentionally or recklessly, "thereby shocking the conscience." See *Akins*, 588 F.3d at 1184.

Defendant Sharp moves for summary judgment on plaintiff's substantive due process claims in Count I, asserting that plaintiff "has failed to offer any evidence that Defendant Sharp knowingly used false evidence to secure a conviction," and that the evidence used to convict plaintiff was trial testimony for which he has absolute immunity under *Briscoe v. LaHue*, 460 U.S. 325, 345 (1983). Sharp also asserts that plaintiff has failed to produce any evidence supporting a claim that he fabricated evidence.

Plaintiff responds that there was no evidence of Plaintiff's guilt of any crime. That the case against him was based on Garrett and Sharp's pretrial actions, including the creation of the false police report and failure to disclose Defendants' corrupt practices.

Sharp asserts that he is entitled to summary judgment based on qualified immunity because there is no identifiable action that he took that would shock the conscience. *Clemmons v. Armontrout*, 477 F.3d 962,965 (8th Cir. 2007).

"At the summary judgment stage, a defendant is entitled to qualified immunity unless '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.' *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)." *Payne v. Britten*, 749 F.3d 697, 708 (8th Cir. 2014) (J. Riley, concurring).

Viewing the facts in the light most favorable to plaintiff, the evidence is that Sharp falsely prepared the police report, which contained false statements of fact. Specifically, although Defendant claims that Plaintiff's fingerprints were found on drug paraphernalia, his fingerprints were not so found. Likewise, Plaintiff's fingerprints were not found on the brown paper bag Defendant claimed was used to perform multiple transactions with individuals on the street and that Plaintiff had been holding moments before Plaintiff was arrested.

These facts give rise to a reasonable inference that Sharp purposefully or with deliberate indifference manufactured false evidence in order to convict Plaintiff. The Eighth Circuit has recognized that a plaintiff can establish

a substantive due process violation by offering evidence of the manufacture of false evidence. *White v. Smith*, 696 F.3d at 754; Moran, 296 F.3d at 647. "There can be little doubt that intentionally manufacturing false evidence to convict a criminal defendant is the sort of 'brutal and inhumane abuse of official power' that shocks the conscience." *White*, 696 F.3d at 758 (quoting *Moran*, 296 F.3d at 647). The first prong of the qualified immunity inquiry is therefore met.

"[T]he right to be free from a conviction purposefully obtained by false evidence and false testimony has long been clearly established." *Id*. at 759 (citing *Napue*, 360 U.S. at 269, and *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (per curiam)). The second prong of the inquiry is also met, and Sharp's motion for summary judgment on plaintiff's substantive due process claim is denied, including on qualified immunity grounds.

Defendant Garrett moves for summary judgment on plaintiff's substantive due process claims in Count I. He also argues that even assuming plaintiff's allegations are true, he is entitled to summary judgment based on qualified immunity. Plaintiff's allegations against Defendant Garrett are that he was aware of the false evidence against Plaintiff and allowed the prosecution based on the false charges. In order to state and maintain a Section 1983 action, a "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662

(2009).  Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.  *Id*.  Plaintiff's claim against Garrett cannot withstand Defendant's qualified immunity challenge.  Plaintiff merely alleges that Garrett failed to intervene to stop a false arrest and prosecution of Plaintiff.  The Eighth Circuit has recently held that "outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations." *Hess v. Ables,* 714 F.3d 1048, 1052 (8th Cir.2013). As a result, Garrett is entitled to qualified immunity on this claim.

Plaintiff alleges in Count II that defendants Garrett and Sharp conspired and acted together to frame him for a crime he did not commit, by engaging in multiple overt acts. Both Garrett and Sharp move for summary judgment on the § 1983 conspiracy claim on the sole basis that Plaintiff has failed to establish an underlying constitutional tort claim, citing *Gordon v. Hansen*, 168 F.3d 1109, 1115 (8th Cir. 1999).

In order to prevail on a claim of § 1983 conspiracy, a plaintiff must show "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v.*

McKinley, 519 F.3d 806, 814 (8th Cir. 2008).(internal citations omitted).

Defendants are correct that a claim of civil conspiracy is not an independent cause of action, and can only be sustained after an underlying tort claim has been established. See *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999). Because the Court has concluded that Defendant Sharp's motion for summary judgment should bedenied in part on Plaintiff's due process claims, the motions for summary judgment on the conspiracy claim should be denied.

Plaintiff's Amended Complaint asserts supplemental state law claims against defendants Garrett and Sharp for malicious prosecution (Count V), wrongful imprisonment (Count VI), and abuse of process (Count VII). The defendants separately move for summary judgment on each count.

Defendants assert entitlement to official immunity on plaintiff's state law tort claims because the actions in investigating and arresting plaintiff were discretionary, and there is no evidence they committed a willful or malicious wrong related to the investigation or arrest. Plaintiff responds that Defendants are not entitled to official immunity because a reasonable juror could find that their actions to frame plaintiff for a crime he did not commit were undertaken in bad faith and with malice.

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but

not from liability in claims arising from their performance of ministerial acts."
*Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 585 (8th Cir. 2006)(cited case omitted). "The investigation of a crime is a discretionary act, not a ministerial one." *Id.* Official immunity does not apply, however, to discretionary acts done in bad faith or with malice. *Id.*; *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (en banc). "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (internal punctuation and quoted case omitted). "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (brackets and quoted case omitted). An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine. See *Twiehaus*, 706 S.W.2d at 447.

In this case, plaintiff alleges that defendant Sharp committed intentional torts – malicious prosecution, false imprisonment and abuse of process – based on his actions in providing the information and evidence on which the prosecution's decision to charge was based. These allegations describe a conscious abuse of official duty and power which fall within the scope of malice or bad faith. Under these circumstances, whether official immunity applies is a question of fact which must be considered by the jury. See *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479-80 (Mo. Ct. App. 2005) (summary judgment inappropriate where facts created a genuine dispute about whether officer acted in bad faith or with malice in making arrest, thereby precluding him from claiming official immunity, and issue was for jury). Defendant Sharp's motion for summary judgment on plaintiff's state law tort claims on the basis of official immunity should therefore be denied.

Defendants Garrett and Sharp separately move for summary judgment on plaintiff's malicious prosecution claim in Count V. Each defendant asserts there was probable cause to arrest Plaintiff; there was a reasonable belief that Plaintiff had committed an offense. Plaintiff responds that there exists disputes as to whether Defendants had probable cause or whether they lied in order to concoct probable cause.

"To establish a prima facie claim for malicious prosecution, a party must plead and prove six elements: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor, (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit. *Edwards v. Gerstein*, 237 S.W.3d 580, 582-83 (Mo. banc 2007)." *State ex rel. O'Basuyi v. Vincent*, 434 S.W.3d 517, 519 (Mo. 2014) (en banc) (original emphasis deleted). Simply triggering an investigation is insufficient to establish that a defendant instigated the prosecution. *Zike v. Advance Am.*, 2010 WL 1816747, at *7 (E.D. Mo. May 3, 2010).

"Where . . . an informant knowingly gives false or misleading information or directs or counsels officials in such a way as to actively persuade and induce the decision to prosecute, the informant may be liable for malicious prosecution." J. D. Lee & Barry A. Lindahl, Modern Tort Law Liability & Litigation § 40:4 (2d ed. 2006). This is the rule in Missouri: "Merely providing honest information from which a prosecution ensues is not instigation, although liability may arise from supplying false information to the prosecuting official." *Crow*, 259 S.W.3d at 115. The instigation element of malicious prosecution has been described by a leading treatise on tort law as follows:

The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause. But the defendant cannot be held responsible unless the defendant takes some active part in instigating or encouraging the prosecution. The defendant is not liable   merely because of approval or silent acquiescence in the acts of another, nor for appearing as a witness against the accused, even though the testimony be perjured . . . . On the other hand, if the defendant advises or assists another person to begin the proceeding, ratifies it when it is begun in defendant's behalf, or takes any active part in directing or aiding the conduct of the case, the defendant will be responsible.

Prosser and Keeton on Torts 872 (5th ed. 1984).

Here, when the evidence is viewed in the light most favorable to Plaintiff, it tends to show that (1) defendant Sharp knowingly prepared a false police report incriminating Plaintiff, arrested Plaintiff based on the allegations in that report, provided false information to the federal prosecutor, and testified falsely at plaintiff's trial; and (2) defendant Garrett failed to intervene in the false arrest and testified falsely at plaintiff's trial. These facts are sufficient to permit a reasonable jury to find that Garrett and Sharp each affirmatively encouraged Plaintiff's prosecution.  Defendants' motions for summary judgment on Plaintiff's malicious prosecution claim should therefore be denied.

Defendants Garrett and Sharp separately move for summary judgment on Plaintiff's wrongful imprisonment claim in Count VI. Defendants argue that probable cause to arrest Plaintiff existed, and therefore, they are entitled to summary judgment.

Plaintiff responds that disputed issues of fact exist concerning whether his detention was legally justified, that preclude summary judgment on this claim. Plaintiff argues that it is for the jury to determine whether Defendants had probable cause or whether they lied in order to concoct that probable cause.

"False imprisonment, also called false arrest, is 'the confinement, without legal justification, by the wrongdoer of the person wronged.' *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo. 1969)." *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006) (en banc). "A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest." *Id.* (cited cases omitted).

"Whether a person instigated an arrest is a fact-specific inquiry; there is no fixed test that may be applied." *Id.* (quoted case omitted). The Court finds that issues of material fact exist which preclude summary judgment on Plaintiff's wrongful imprisonment claim. Defendants' motions for summary judgment should therefore be denied on Count VI.

In Count VII, plaintiff asserts a claim against defendants Garrett and Sharp for the state law tort of abuse of process. Defendants move for summary judgment on the grounds that the claim is barred by the applicable statute of limitations, and that it fails on the merits.

Defendants Garrett and Sharp assert that the Missouri five-year statute of limitations for general personal injury claims, § 516.120(2), Mo. Rev. Stat. (2000),

applies to abuse of process claims, citing *Corley v. Jacobs*, 820 S.W.2d 668, 672

(Mo. Ct. App. 1991). Defendants assert that the statute begins to run from the

termination of the acts that constitute the alleged abuse of process, citing

*Steinhilber v. Lake Winnebago Home Owner's Association*, 965 F.2d 602, 604 (8th

Cir. 1992).

Defendants argue that the statute of limitations in this case began to run at

plaintiff's trial in June 2006 1998 and expired in June 2011, and they are entitled to

summary judgment because the claim is time barred.

Plaintiff responds that defendants fail to cite any Missouri case law

addressing the statute of limitations for abuse of process in the context of a claim

by an exonerated prisoner where the abuse of process resulted in a wrongful

conviction. Plaintiff argues that the statute of limitations does not bar his abuse of

process claim for three reasons. First, plaintiff asserts that the Missouri Supreme

Court would adopt the analytical framework of *Heck v. Humphrey*, 512 U.S. 477,

which holds that a claim for damages for an unconstitutional conviction or

imprisonment, or for other actions whose unlawfulness would render a conviction

or sentence invalid, does not accrue until the conviction or sentence has been

reversed on direct appeal or otherwise set aside.  Plaintiff states that his abuse of

process claim is premised on the false statements and manufacture of evidence in

the police report and search warrant affidavit, the same facts Defendants Garrett

and Sharp testified to at trial that resulted in his conviction. Plaintiff argues that an abuse of process claim premised on the statements in the police report and warrant affidavit would have impugned his then-existing conviction, and is therefore tolled under Heck's principles.

Second, plaintiff argues that the statute of limitations on this claim did not begin to run until his conviction was set aside, because he would have been collaterally estopped by his conviction from bringing an abuse of process claim during that time period, citing *Adams v. VanWormer*, 892 S.W.2d 655 (Mo. Ct. App. 1994) (convicted murderer was collaterally estopped from claiming in civil lawsuit against police officer and witness involved in criminal trial that these witnesses lied or suborned perjury to wrongly convict him).

Third, plaintiff argues that abuse of process can constitute a "continuing tort" or "continuing wrong" under Missouri law, citing *Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. 1980) (en banc) ("If . . . the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit."); and *Guirl v. Guirl*, 708 S.W.2d 239, 247 (Mo. Ct. App. 1986) (filing and *maintaining* a petition constituted abuses of process).

Finally, plaintiff argues that Sharp and Garrett raised these same legal arguments in their motions to dismiss, which were denied, and have not raised any new legal or factual grounds to revisit that decision on summary judgment.

A plaintiff must prove three elements to succeed on a claim for abuse of process under Missouri law: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. 1979) (en banc). In contrast to a malicious prosecution claim, a prior favorable termination is not an element of an abuse of process claim. *Moffett*, 283 S.W.2d at 599 ("The purpose for which the process is used, once it is issued, is the only thing of importance.

Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that it was obtained without probable cause or in the course of a proceeding begun without probable cause.") (quoted source omitted).

Because this is a state law claim, the Court applies Missouri law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel. See *Walker v. Barrett*, 650 F.3d 1198, 1203-04 (8th Cir. 2011). The Missouri five-year statute of limitations applies

to a claim for abuse of process. See *Corley*, 820 S.W.2d at 672. The statute of limitations on an abuse of process claim under Missouri law begins to run "from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued." *Id*. (citation omitted). "The cause of action for an abuse of process is complete as soon as the acts complained of are committed." *Id*. (quoting 72 C.J.S. Process § 112 (1987)).

Barring any exceptions or tolling provision, plaintiff's abuse of process claim from events that occurred in 2006 are barred by the five-year statute of limitations.

To determine whether tolling principles apply to save the abuse of process claims, the Court must first predict whether the Missouri Supreme Court would apply the *Heck* accrual rule to abuse of process claims, an issue that court has not addressed. See *Blankenship v. USA Truck, Inc*., 601 F.3d 852, 856 (8th Cir. 2010) (recognizing that federal courts make an "Erie-educated guess" when a state supreme court has not addressed an issue).

The Supreme Court in *Heck*, 512 U.S. at 484, held that favorable termination was an essential element of a § 1983 claim based on allegations police officers engaged in an unreasonable investigation leading to the plaintiff's arrest, knowingly destroyed exculpatory evidence, and caused an illegal voice identification procedure to be used at trial. The Court concluded the § 1983 claims

were most analogous to the common law tort of malicious prosecution. The Supreme Court noted the principle that "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit," *id*. at 484 (quoted source omitted), and held this principle precluded a § 1983 claim that necessarily required the plaintiff to prove the unlawfulness of his conviction or confinement. *Id*. at 484, 487. The Court also held that a cause of action under § 1983 "for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id*. at 489.

The *Heck* accrual rule was clarified and limited in *Wallace v. Kato*, 549 U.S. 384 (2007), in which the Supreme Court held that the statute of limitations for a § 1983 claim for unlawful arrest in violation of the Fourth Amendment began to run when the arrestee appeared before an examining magistrate and was bound over for trial, not later when charges were dropped. *Id*. at 390. The Supreme Court looked to the federal common law of false imprisonment as the most analogous cause of action, and held that the claim could not accrue until the tort of false imprisonment ended. *Id*. at 388. The Court then turned to the question of when false imprisonment ends and determined that it ends when the person becomes held pursuant to legal process:  Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim

becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when the legal process was initiated against him, and the statute would have begun to run from that date[.] *Wallace*, 549 U.S. at 389-90 (internal citations omitted).

In *Wallace*, the Supreme Court declined to apply the Heck rule for deferred accrual, which applies only where there is an outstanding criminal judgment and "delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction* which success in that tort action would impugn." *Id*. at 393. The Supreme Court distinguished *Wallace* from *Heck* on the basis that the claim in *Heck* was analogous to the tort of malicious prosecution, rather than false

imprisonment. *Id*. at 393-94. The Court stated that while a claim of malicious prosecution would inevitably impugn the validity of a conviction, a claim of false imprisonment only impugns an *anticipated* future conviction because the claim ends well before the conviction occurs. *Id*. at 394.

The Seventh Circuit has characterized Wallace as holding "a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity." *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010). This interpretation of *Wallace's* holding focuses "on the factual distinction between *Heck* and *Wallace*: the tort of false arrest is complete, and therefore begins to accrue, once the individual is brought before a magistrate; the tort of malicious prosecution is not complete until a conviction occurs and that conviction has been overturned, and therefore the statute of limitations for malicious prosecution does not begin to accrue until that time." *Parish v. City of Elkhart*, 614 F.3d 677, 681-82 (7th Cir. 2010).

As with the unlawful arrest claim in *Wallace*, Plaintiff's claims for abuse of process under Missouri law were complete and accrued immediately upon the termination of the acts constituting the improper use of process, see *Corley*, 820 S.W.2d at 672, well prior to plaintiff's criminal conviction. In contrast to the facts in *Heck*, plaintiff did not have to show that the prior criminal proceedings terminated in his favor before he could bring an abuse of process claim. See

*Moffatt*, 283 S.W.2d at 599. Plaintiff could have brought suit on his abuse of process claim immediately after the acts he complains of occurred, and for these reasons the Court concludes the claim is time barred.12 Cf. *Dickerson v. City of Hickman*, 2010 WL 816684, at *5 (W.D. Ky. Mar. 4, 2010) (one-year Kentucky statute of limitations for abuse of process claims accrued from the termination of the acts which constituted the abuse complained of, and the claims were time barred). For these reasons, the Court concludes that the Missouri Supreme Court would not apply the *Heck* accrual rule to Missouri abuse of process claims.

Addressing plaintiff's second argument, Missouri courts have held that certain types of claims are collaterally estopped by a criminal conviction, see, e.g., *VanWormer*, 892 S.W.2d at 657 (criminal conviction collaterally estopped the defendant from claiming he was not guilty and that witnesses lied in the criminal proceeding to wrongly convict him); *Johnson v. Raban*, 702 S.W.2d 134, 138 (Mo. Ct. App. 1985) (denial of relief in postconviction proceeding collaterally estopped defendant from relitigating his counsel's negligence in a legal malpractice action). The Court concludes, however, that plaintiff's criminal conviction would not have collaterally estopped him from bringing the abuse of process claim for the same reasons the claim would not have been barred by the *Heck* accrual rule: under Missouri law, the claim accrued when the acts alleged to be abuse of process were

completed, and plaintiff was not required to show favorable termination of the criminal proceedings against him to establish an abuse of process claim.

Finally, because the statute of limitations on an abuse of process claim "begins to run from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process issued," *Corley*, 820 S.W.2d at 672, the Court concludes the Missouri continuing tort or continuing wrong doctrine does not apply to an abuse of process claim. abuse of process claim. This need not be addressed, however, as all of the actions plaintiff claims as abuse of process were completed in 2006, more than five years before this action was filed. For these reasons, the Court concludes that defendants' motions for summary judgment should be granted on plaintiff's abuse of process claims in Count VII, which are barred by the statute of limitations. As a result, the Court does not reach the defendants' arguments concerning the merits of the abuse of process claims.

## Conclusion

For the foregoing reasons, the Court concludes that defendants Garrett and Sharp's motions for summary judgment should be granted in part, denied in part, as provided herein.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Garrett's Motion for Summary

Judgment, [Doc. No. 105], is granted in part and denied in part;

   **IT IS FURTHER ORDERED** that defendant Sharp's Motion for Summary

Judgment, [Doc. No. 108], is granted in part and denied in part.

   A separate judgment will be entered upon the resolution of the remaining

issues herein.

   Dated this 25th day of March, 2015.


                                    _____
                                       HENRY EDWARD AUTREY
                                    UNITED STATES DISTRICT JUDGE