# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MICHAEL HOLMES,          )
                                   )
        Plaintiff,          )
                                   )
        v.                    )          Case No. 4:12CV2333 HEA
                                   )
FRANCIS G. SLAY, et al.,      )
                                   )
        Defendants.      )

## OPINION, MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 matter is before the Court on a motion for summary judgment, [Doc. No. 114], filed by defendants Francis G. Slay, Bettye Battle-Turner, Richard Gray, Jerome D. Lee and Thomas Irwin, sued in their official capacities as members of the Board of Police Commissioners of the St. Louis Metropolitan Police Department (collectively the "Board"). Plaintiff opposes the motion. For the reasons set forth below, the motion will be granted.

### Facts and Background

This action was filed on December 17, 2012 by Plaintiff Michael Holmes against the members of the Board and former St. Louis Metropolitan Police Department ("SLMPD") police officers, Defendants Bobby Lee Garrett and Shell Sharp. Plaintiff alleges that his federal civil rights were violated when he was arrested, convicted and imprisoned for a period of over five years based on false evidence manufactured by defendants Garrett and Sharp.

Specifically, Plaintiff alleges that Plaintiff was falsely accused by Sharp of being in possession of approximately 200 grams of cocaine base. Sharp claimed that a confidential source advised him that "Big Mike," a 270 pound black male wearing a yellow jumpsuit, was selling cocaine from the residence at 5894 Cates, St. Louis, Missouri. Sharp claimed that he established

surveillance of the premises in an unmarked vehicle across the street from the residence, during which he observed three "hand-to-hand" transactions between Plaintiff and two unidentified black males. The police report did not identify the vehicles, the license plates or any further description of these two black males. Sharp did not radio any of the other nine officers on standby at a nearby location to advise them about the vehicles suspected to be departing with narcotics. The police report described a transaction between Mr. Holmes and a third black male which Sharp later admitted never happened and/or was a typographical error.

Plaintiff further alleges that Sharp's false claims in the police report and to federal prosecutors regarding these transactions, in order to obtain the wrongful prosecution and conviction of Plaintiff, is part of a pattern whereby Sharp, Garrett and others routinely falsified information in order to obtain warrants, including falsifying information purportedly given by confidential informants and falsifying observations of "transactions" purportedly made during surveillance.

Sharp further claimed in the police report and to federal prosecutors that he radioed the standby officers to come to the scene, and approached the residence at 5984 Cates to do a knock and talk. The door was opened by 85 year old Maetta Griffin, Plaintiff's grandmother, to whom Sharp claimed he told about the information from the alleged confidential informant and the transactions he witnessed during surveillance, and who then gave consent to search the residence.

In the police report, Sharp claimed that when the officers entered the house they saw Plaintiff coming down the stairs. At trial, Sharp testified that he did not see Plaintiff until they reached the second floor landing, where they saw Plaintiff coming down the stairs carrying a brown paper bag. Sharp claimed falsely that Plaintiff dropped this bag in plain sight of the

officers and then ran back upstairs. Sharp claimed that Officer Ray detained Plaintiff while Sharp looked into the bag to determine whether it contained controlled substances, and found cocaine.

Sharp claimed falsely that Plaintiff told him he lived on the third floor, and even identified his "bedroom" to the officers. Sharp claimed in the police report and to federal prosecutors that after searching the room identified by Plaintiff, the officers recovered a roasting pan, glass beakers, a scale, some heroin, $4000 from an open safe, baggies, a shotgun and two bags of rubber bands. The officers did not search the rest of the house. Sharp admitted that there were two other black males present in the house that day, but could not recall what they looked like or how they were dressed. The police report indicated that both of these men were in the house. Sharp did not ask those people which bedrooms they lived in or otherwise interview them.

Plaintiff alleges that Sharp's claims were false. As in other, similar cases, Sharp manufactured evidence in order to frame Plaintiff for possession of the crack cocaine. Plaintiff did not have or "throw down" a brown bag on the stairs in front of the officers. He was never in possession of the weapons, drugs or other paraphernalia admitted into evidence at his trial.

While still at the home after he was arrested, Defendant Garrett told Plaintiff that he was going to take him downtown and would release him without charging him "as long as he agreed not to go back to that house anymore." Detective Garrett indicated to Plaintiff that he was well aware that Plaintiff had lived in Ferguson for approximately two years and did not reside at his Grandmother's residence where he was arrested.

In addition, in an effort to further carry out Defendants' corrupt conspiracy, Officer Garrett performed surveillance at the scene of the arrest and performed an interview of Plaintiff at the station after his arrest. At this time he encouraged Plaintiff to sign a consent form to search the premises where Plaintiff had been arrested at his Grandmother's residence, which

Plaintiff refused to do. Garrett did this in an attempt to validate the search and falsely establish that Plaintiff lived at or was in control of the premises and therefore had authority to consent to the search.

During the interview Defendant Garrett also had Plaintiff sign a "money disclaimer" attesting that Plaintiff had no knowledge of any monies in the house. Garrett did this in furtherance of the officers' corrupt conspiracy, to ensure that Garrett, Sharp and other officers could steal and keep any money found inside the house.

While in the Federal Court house waiting for his trial to begin, Plaintiff also observed Defendants Garrett and Sharp go into a conference room where Garrett and Sharp remained for at least an hour. On information and belief, the purpose of this meeting was to go over the details of Defendants' conspiracy and ensure that it was completed successfully.

Defendant Garrett's false assertion to federal prosecutors that Plaintiff was an 'admitted drug dealer' was crucial in their decision to pursue the prosecution of Plaintiff arising from the incident on December 9, 2003, and thus instrumental and material in carrying out the malicious prosecution of Plaintiff, ultimately resulting in his illegal and unconstitutional imprisonment. Furthermore, Garrett at all times acted with and coordinated the conspiracy with Defendant Sharp and other officers of the Department to obtain Plaintiff's wrongful conviction.

Plaintiff also alleges that the Board had a policy, or pervasive custom and practice, of reliance on manufactured evidence, and that it failed to train, supervise, control, instruct, or discipline the officers under its control in various respects. Plaintiff alleges that as a result of Garrett and Sharp's conduct, he was found guilty by a jury of possession of more than 50 grams of a substance containing cocaine base with intent to distribute and possession of firearms in furtherance of a drug trafficking crime. Plaintiff was sentenced to 300 months in prison.

Plaintiff alleges that Defendant Garrett was indicted on federal corruption charges related to his official duties and later pleaded guilty to federal criminal charges of theft, conspiracy and making false statements and admitted planting evidence, arresting an innocent man to cover up the theft of money and involvement in falsifying court documents, lab forms and police reports. *See United States v. Garrett*, No. 4:08CR703 ERW (E.D. Mo.). Plaintiff alleges that the investigation also led to defendant Sharp leaving the police department "under charges" of fraudulently concocting affidavits in support of search warrants.

Plaintiff asserts federal civil rights claims against Garrett, Sharp and the Board pursuant to 42 U.S.C. § 1983 and supplemental state law claims against Garrett and Sharp for malicious prosecution, wrongful imprisonment and abuse of process. Plaintiff asserts federal civil rights claims against the Board pursuant to 42 U.S.C. § 1983.

In Count III of the Amended Complaint, plaintiff alleges the existence within the SLMPD of a policy or custom and practice of officers using false testimony, planting evidence, suppressing exculpatory evidence, stealing property from alleged crime scenes, and otherwise manufacturing evidence to convict persons regardless of their guilt or innocence. In Count IV, plaintiff alleges that the Board failed to train, supervise, control, instruct or discipline the officers under its control in various respects, despite indications of ongoing corrupt and illegal activities by SLMPD officers.

**Summary Judgment Standard**

The standard applicable to summary judgment motions is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine dispute as to any material fact and

the moving party is entitled to judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, see *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

The Court is mindful that in reviewing a motion for summary judgment, it must view the facts in the light most favorable to the non-moving party, give the non-moving party the benefit of any inferences that can logically be drawn from those facts, *Matsushita*, 475 U.S. at 587, and resolve all conflicts in favor of the non-moving party. *Robert Johnson Grain Co. v. Chemical Interchange Co*., 541 F.2d 207, 210 (8th Cir. 1976).

## Discussion

Any legal action against the St. Louis Metropolitan Police Department must be brought by naming the members of the Board of Police Commissioners in their official capacities as defendants. *Best v. Schoemehl*, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983). Plaintiff's claims against the Board are treated as claims against the municipality. See, e.g., *S.L. ex rel. Lenderman v. St. Louis Metropolitan Police Dep't Bd. of Commr's*, 2012 WL 3564030, at *9 (E.D. Mo. Aug. 17, 2012). Municipalities cannot be liable under § 1983 on the basis of respondeat superior. *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'" *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell*, 436 U.S. at 691) (internal quotation marks omitted). A municipality may also be liable under § 1983 if it failed to properly supervise or train an offending employee who caused a deprivation of constitutional rights, but only if the failure to train or supervise rises to the level of deliberate indifference to the rights of others or tacit authorization of the offensive acts. See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989) (failure to train); *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (failure to supervise).

In Count III, Plaintiff asserts § 1983 claims against the Board based both on policy and custom. These claims are analytically distinct and will be discussed separately. The Board moves for summary judgment arguing there is no evidence to support its liability based on either a policy or custom.

In the context of municipal liability under § 1983, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). With respect to Plaintiff's claim based on an unconstitutional policy, the Board asserts that the SLMPD did not have a policy instructing officers to lie, plant or suppress evidence, steal property from crime scenes, or in any other way manufacture evidence. The Board states the evidence is the opposite, as Rule 7, Section 7.004 of the SLMPD Police Manual dictates that all officers "shall conduct themselves in such a manner that no discredit will be brought upon the Department in general or themselves in particular." The Board asserts that this language would include conviction of a crime, neglect of duty, conduct detrimental to the public peace or welfare, failing to conduct a proper investigation, and accepting bribes.

Plaintiff does not identify an official policy of the Board that affirmatively sanctions unconstitutional actions. As a result, the Board has established that its policy is lawful on its face, is not unconstitutional, and therefore cannot be the "moving force" of any constitutional violation. See *Szable v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390-91 (8th Cir. 2007) (en banc). The Eighth Circuit has held that a "written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." *Id.* at 392. The Board is therefore entitled to summary judgment to the extent plaintiff's claims are based on the existence of an official policy.

Municipal liability under § 1983 based on the existence of a "custom or usage" is shown by:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Mettler*, 165 F.3d at 1204 (quoting *Ware*, 150 F.3d at 880).

In support of its motion, the Board argues that the evidence in the record does not support plaintiff's claim that it or the SLMPD had a custom of using false testimony to obtain warrants, lying in police reports, to prosecutors and at trial, stealing property from crime scenes, planting and suppressing evidence, or otherwise manufacturing evidence. The Board states the IAD complaints after December 9, 2003, the date of Plaintiff's arrest, cannot support a municipal custom claim.

The Board asserts that the IAD complaints upon which Plaintiff relies are mere face sheets which typically show the name of the first allegation against an officer, the findings of sustained or not sustained on the various allegations, and any resulting corrective action. They do not show the extent of the investigation, findings of fact and the names or classifications of the other allegations lodged against the officers. As a result, Defendants argue that it is difficult if not impossible to determine what charges were sustained against officers in the investigations which often took place decades ago. In response, Plaintiff argues that Garrett and Sharp each had long histories of complaints.

Plaintiff cites the testimony of his expert witness Dr. Angela Wingo that the SLMPD did not follow its own discipline code or hold its officers accountable for their actions, and that this failure created an environment that led to increased misconduct by officers and ultimately to criminal acts.

In support, plaintiff identifies a "series of scandals" in the SLMPD between 1994 and 1996, the years leading up to plaintiff's arrest. In the first, SLMPD officers Finerson, McFerren and Billups were "caught carrying out a plan to rob two drug dealers for personal gain of $108,835.00" in 1994. Plaintiff asserts that the three officers resigned and pleaded guilty to criminal charges, but the IAD reports produced by the Board do not show any sustained charges against them.

In the second, Officer Robert M. Baker was convicted in 1994 of "extorting money from motorists by seizing guns and money from motorists in return for not arresting them or charging them with a crime," and there was testimony this scheme had been going on for ten years. Plaintiff states that Baker's IAD file shows he was investigated by the DEA from 1992 to 1994, had a sustained charge in 1994 where he and other unidentified officers prepared false statements to the IAD regarding an incident in which a police pursuit resulted in an accident, and in 1994 prepared a false report to cover up that a clerk had tested positive for cocaine. Id. at 10-11.

Third, SLMPD officers Butler, Chandler and Mack resigned in 1996 "after being investigated for shaking down drug dealers," but again the IAD reports do not show any sustained charges against them.

Plaintiff asserts that the SLMPD's custom of corrupt practices is also demonstrated by IAD statistics that show a dramatic increase in the number of sustained and unsustained charges of Conduct Unbecoming an Officer" during the

The Eighth Circuit recently discussed the parameters of municipal liability under § 1983 based on pervasive employee misconduct:

> A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by . . . misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a custom or usage with the force of law.'

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) (internal quotation marks omitted)). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish*, 963 F.2d at 204. A plaintiff must establish (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees, (2) to which policymaking officials were deliberately indifferent or which policymaking officials tacitly authorized after notice to the officials of that misconduct, and (3) that custom of deliberate indifference or tacit authorization was a "moving force behind the constitutional violation." *Thelma D. v. Bd. of Educ. of St. Louis*, 934 F.2d 929, 932–33 (8th Cir. 1991) (quoting *Jane Doe "A" v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990)). A city will be liable "only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy.'" *Szabla v. City of Brooklyn Park, Minn.*, 486

F.3d 385, 392 (8th Cir. 2007). *Doe ex rel. Doe v. Gay*, 719 F.3d 679, 686-87 (8th Cir. June 20, 2013), reh'g en banc granted, vacated, aff'd by an equally divided court, No. 12-2052 (8th Cir. Oct. 29, 2013) (en banc).

As a threshold matter, "at summary judgment, the requisite 'genuine dispute,' Fed. R. Civ. P. 56(a), must appear in *admissible* evidence." *Crews v. Monarch Fire Prot. Dist.*, __ F.3d __, 2014 WL 6435027, at *5 (8th Cir. Nov. 18, 2014) (cited case omitted). The Board contends the IAD face sheets are inadmissible hearsay, including double hearsay. Plaintiff argues that the IAD face sheets are admissible under either the business records exception to the hearsay rule, Rule 803(6), Fed. R.Evid.; the public records exception, Rule 803(8); or as admissions of a party opponent, Rule 801(2).

With respect to Rule 803(6), plaintiff states the face sheets were created by the SLMPD, maintained in the ordinary course of its business, and were produced in response to plaintiff's discovery requests for these specific documents maintained by it. Also, Captain Hayden testified that IAD statistics are created and kept in the regular course of the SLMPD's business and are a normal part of the police inspector's responsibility to maintain. Plaintiff asserts that sustained IAD complaints are admissions of a party opponent because sustaining a complaint against an officer clearly indicates the SLMPD adopted and believed the complaint to be true, and the SLMPD authorized the IAD to make the statements in IAD records, on matters within the scope of its work for the SLMPD.

Plaintiff also asserts that IAD card files, sustained complaints and statistics are admissible as public records under Rule 803(8) because they constitute factual findings from a legally authorized investigation into officer conduct.

A party objecting to admission of public records under Federal Rule of Evidence 803(8) or business records under Rule 803(6) bears the burden to "prove inadmissibility by establishing sufficient indicia of untrustworthiness" after the offering party has met its burden to establish the foundational requirements of the exception. *Shelton v. Consumer Products Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002). The Board's assertion that the IAD face sheets are inadmissible hearsay, as presented in its reply brief, is conclusory and not supported by citation to relevant case law. The surresponse and surreply filed by the parties, however, primarily address the admissibility of the IAD records. In its surreply, the Board argues the face sheets are not trustworthy under Federal Rule of Evidence 803(6)(E) and 803(8)(B) based on both the source of information and other circumstances. Specifically, the Board asserts it is very difficult to tell from a face sheet alone what misconduct was being alleged against an officer, much less what was sustained, and because the information shown is so limited and the source and circumstances largely unknown, there is no way to test the reliability or trustworthiness of the information. The Board also asserts that because the summaries include information received from a witness or complainant, that information is double hearsay.

The evidence before the Court is that under SLMPD policy, IAD records of sustained complaints are kept for five years, after which time all documents relating to the complaint are destroyed except for the front cover sheet (i.e., the face sheet), titled "Administrative Reports Transmittal Sheet." The face sheets typically list the name or classification of the first allegation against the officer(s) involved, a short one- or two paragraph summary of the complaint, the IAD's recommended finding on the allegations (i.e., "sustained," "not sustained," "exonerated," or "unfounded"), and any resulting disciplinary or corrective action. The face sheets do not show the extent of the investigation, any findings of fact, or the names or classifications of other

allegations lodged against the officer. The findings that appear on the face sheets are entirely summary, and do not provide any facts or identifying information about the underlying allegation(s).

The Board did not cite any case law holding that IAD reports are hearsay, and it appears most courts have concluded that at least portions of IAD reports fall within either the business records or public records exception of Federal Rule of Evidence 803.5 Although the evidence here consists of IAD face sheets as opposed to reports, the Court concludes the face sheets are admissible as business records under Rule 803(6). These documents are official SLMPD records made and kept in the regular course of business by SLMPD personnel with knowledge of the facts, at or near the time of IAD investigations into complaints against SLMPD officers. Although the lack of detail and omissions from the IAD face sheets limit their evidentiary value, the Court finds the face sheets have sufficient indicia of trustworthiness to be considered on summary judgment on the issue of a departmental custom with respect to officer discipline, as they do indicate the general nature of complaints against officers and show the final outcome as determined by IAD. Further, to the extent the IAD face sheets contain hearsay, the Court does not consider them.

The newspaper articles Plaintiff offers concerning the six officers who allegedly resigned and/or were convicted for criminal conduct in 1994 and 1996 are indeed hearsay. *Crews*, __ F.3d __, 2014 WL 6435027, at *5. Because the Court must consider the evidence in the light most favorable to the non-moving party, it will consider this evidence on summary judgment based on the reasonable likelihood plaintiff can produce at trial, from public records or otherwise, admissible evidence about these six former officers.

The Eighth Circuit "has held municipalities liable under *Monell* when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct." *Mettler*, 165 F.3d at 1205. "Evidence that a police department failed to investigate previous incidents *similar to the incident in question* may support a finding that a municipal custom exists[.]" *Id.* (emphasis added). In *Rohrbough v. Hall*, 2008 WL 4722742, at *13 (E.D. Mo. Oct. 23, 2008), involving claims of police brutality, the plaintiff provided evidence of 322 complaints of physical abuse against the SLMPD in the five years prior to the 2002 incident at issue, but only one complaint was sustained. Judge Webber found the Board had "either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching" it because complaints of physical abuse only reached the Board if (1) a punishment of more than fifteen (15) days suspension was imposed by the Inspector of Police and approved by the Chief of Police, or (2) a non-probationary officer requests a Board trial. *Rohrbough*, 2008 WL 4722742, at *11.

Here, the evidence is that the same procedures were in place in 1991 through 1997 as were described in Rohrbough. In that case, Judge Webber held that although Mr. Rohrbough introduced evidence of numerous complaints of excessive use of force filed against officers, he had no evidence the Board had notice of the complaints. Id. at *11. In fact, as in this case, the plaintiff produced evidence the Board had *no* notice of the complaints. *Id.* As a result, the Board was entitled to summary judgment on Rohrbough's claim based on the existence of a municipal custom. *Rohrbough*, 2008 WL 4722742, at *11. In contrast, in *S. L. ex rel. Lenderman v. St. Louis Metropolitan Police Department Board of Commissioners*, 2012 WL 3564030, at **9-10 (E.D. Mo. Aug. 17, 2012), which concerned an incident of unlawful arrest and false reporting from 2010, Judge Jackson found sufficient evidence existed from which a jury could

find the Board had notice of and ignored a widespread pattern of unlawful arrest and false reporting. In *Lenderman*, the plaintiff submitted 19 IAD investigation reports from the preceding five-year period in which a charge of false reporting was sustained, and also 23 instances of false reporting during the same time period in which officers were found to have submitted false reports to conceal unlawful conduct, but no IAD investigations were conducted. *Id.* Here, Plaintiff does not offer evidence the Board had notice of defendants Garrett or Sharp's bad conduct prior to Plaintiff's arrest, or that other officers had sustained or unsustained complaints concerning false testimony to prosecutors or at trial, stealing from crime scenes, or planting, suppressing or otherwise manufacturing evidence. Plaintiff's case rests most strongly on sustained IAD complaints from a twelve year period preceding his arrest, but those complaints are dissimilar from the claims in this case as *none of them* concerned officers testifying falsely to prosecutors or at trial, stealing from crime scenes, or planting, suppressing or otherwise manufacturing evidence.  Plaintiff does not have evidence that the SLMPD did not investigate complaints, and instead relies on his expert's testimony that the disposition of the complaints indicates the SLMPD did not adhere to its discipline code and was too lenient, leading officers to conclude they could engage in illegal behavior without fear of reprisal or correction, and that the SLMPD hid evidence of corruption by reporting complaints using general categories of "Conduct Unbecoming" and "Violation of Departmental Policies" instead of specific categories.

The Court concludes the Board is entitled to summary judgment on Plaintiff's municipal custom claim. When the evidence is viewed in the light most favorable to plaintiff, the dissimilar sustained complaints from 1991 through 2003 and the evidence of the officers who were convicted or resigned do not show the existence of a continuing, widespread, persistent pattern of

unconstitutional misconduct for false reporting, stealing from crime scenes, planting evidence or otherwise manufacturing evidence, that the Board had notice of but ignored.

The Court also finds that the IAD face sheets for the prior sustained complaints do not provide a factual basis for plaintiff's expert's opinion that the SLMPD had a custom of failing to follow its own discipline code and adequately discipline officers for misconduct. It is not possible to determine the IAD's fact findings or the nature of the sustained charges from the face sheets, as the expert admitted. As a result, Dr. Wingo's opinion that SLMPD discipline was inadequate and led to a culture of unconstitutional acts is speculation and conjecture. See *Livers v. Schenck*, 700 F.3d 340, 357 (8th Cir. 2012) (rejecting as "speculation and argument" plaintiff's allegation that supervision was inadequate because sheriff did not discipline his employees for possible mishandling of evidence). Similarly, Plaintiff's theory that it is reasonable to infer the Board hid evidence of false reporting and manufacture of evidence by categorizing it as "Conduct Unbecoming an Officer" or "Violations of Department Procedures" is speculation, which cannot be a basis for municipal liability and is insufficient to withstand summary judgment. See *Livers*, 700 F.3d at 357.

Plaintiff's statistical evidence of an increase in "Conduct Unbecoming" complaints also cannot support his municipal custom claim because he has no evidence regarding the factual background of any of the complaints, sustained or unsustained. As a result, he cannot show the complaints had merit, were similar enough to the conduct at issue in this case to put the Board on notice, or that the investigations conducted or discipline imposed were inadequate. In the absence of such evidence "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging" unconstitutional misconduct. *Mettler*, 165 F.3d at 1205.

The fact that the Board was insulated from and only learned of complaints in limited circumstances cannot by itself be a basis for § 1983 liability. In the *Rohrbough* and *Lenderman* cases, in addition to evidence that the Board was insulated from the complaint process, there was also evidence of prior, similar complaints that would have put the Board on notice of widespread misconduct had it not been so insulated. No such evidence of numerous, prior similar complaints exists here, so there is no fact issue as to notice. Further, assuming the Board had notice of the who resigned or were convicted, plaintiff has not established that their conduct was sufficiently similar to Garrison and Sharp's in this case, as they were accused of armed robbery of drug dealers and drug trafficking, shaking down drug dealers on the street, and extorting money from motorists found in possession of guns.

Although those actions fall within the general category of police corruption, there was no evidence of false testimony, stealing from a crime scene, or planting or manufacturing evidence as is present in this case. Further, Plaintiff does not make a showing of a "prior pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1076-77 (8th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). The Board's motion for summary judgment should be granted on plaintiff's municipal custom claims.

In Count IV, Plaintiff asserts § 1983 claims against the Board based on its failure to train and supervise Garrett and Sharp. The Board moves for summary judgment arguing there is no evidence to support its liability based on either a failure to train or a failure to supervise.

The Supreme Court has held "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the

failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). To establish a failure to train claim, a plaintiff must show that the defendant had notice its procedures were inadequate and likely to result in a violation of constitutional rights. See *City of Canton*, 489 U.S. at 396 (O'Connor, J., concurring). A failure to train claim may also arise from a pattern of constitutional violations that put the municipality on notice its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens. *Id*. at 397 (O'Connor, J., concurring); see also *Thelma D. ex rel. Delores A. v. Board of Educ. of City of St. Louis*, 934 F.2d 929, 934-35 (8th Cir. 1991).

In support of its motion for summary judgment, the Board submits evidence that Garrett and Sharp underwent Police Academy training for four months which training contained blocks of instruction in areas including constitutional law, criminal investigations, report writing, the police manual and special orders. Training also covered the Fourth Amendment, the application and execution or search warrants, search warrant affidavits, confidential informants, courtroom testimony, and narcotics investigations.

After graduation, Defendants Garrett and Sharp received training on a yearly basis during their careers with the police department. The Board also submits the lesson plans from its constitutional law and criminal investigation training with its reply memorandum.

In order for his failure to train claims to survive summary judgment, plaintiff must provide evidence the Board was on notice its training procedures "were inadequate and likely to result in a violation of constitutional rights." *Thelma D.*, 934 F.2d at 934. As stated above, there are two ways plaintiff may prove notice. "First, notice may be implied where failure to train

officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious." *Id.* Second, "a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens." *Id*. at 935.

Plaintiff argues the SLMPD training procedures were inadequate because there was no indication of ongoing ethics training in the personnel files of the officers, even though Garrett and Sharp had prior serious allegations of misconduct

The Court concludes there is no evidentiary basis for determining that the training offered by the SLMPD was constitutionally deficient or evidenced deliberate indifference to the rights of citizens. The evidence indicates that Garrett and Sharp received significant initial Police Academy training and yearly ongoing training. In light of the regular law enforcement duties of a police officer, Plaintiff cannot establish that there was a patently obvious need for additional ethics training to instruct Garrett and Sharp not to offer false testimony or prepare false reports, steal property from a crime scene, plant evidence or otherwise manufacture evidence. Compare *Livers*, 700 F.3d at 356 (no "patently obvious need" existed to train employees whose job was to "identify, document, collect, and preserve evidence from crime scenes" not to fabricate evidence); *Andrews*, 98 F.3d at 1076-77 (where officer raped and sexually assaulted women, two weeks of on-the-job training with another officer and attendance at the police academy within one year of employment was constitutionally adequate training and there was no "patently obvious need . . . to specifically train officers not to rape young women."); *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989) (finding training was adequate against a charge of excessive force and denial of medical care where the city provided on-the-job training and required attendance at the police academy).

Plaintiff also does not present evidence sufficient to establish liability based on a pattern of constitutional violations putting the Board on notice that its officers' responses to a "regularly recurring situation are insufficient to protect the constitutional rights of its citizens." *Thelma D.*, 934 F.2d at 935. As discussed above with respect to plaintiff's municipal custom claim, neither Garrett and Sharp's disciplinary history nor that of the SLMPD police force as a whole demonstrates a pattern of testifying falsely or preparing false reports, stealing property from a crime scene, or planting or otherwise manufacturing evidence, that existed prior to the time of plaintiff's arrest.

Finally, again as discussed with respect to plaintiff's custom claim, plaintiff has not introduced evidence that the Board had notice of the citizen complaints filed prior to Plaintiff's arrest, but instead presented evidence that the Board did not have such notice. For these reasons, the Board is entitled to summary judgment on Plaintiff's failure to train claims.

"Under § 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.' *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (citing *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998)). Neither claim can succeed without evidence the municipality '[r]eceived notice of a pattern of unconstitutional acts committed by [its employees].' *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)." *Atkinson v. City of Mountain View*, Mo., 709 F.3d 1201, 1216-17 (8th Cir. 2013). A failure to supervise claim may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts. *Liebe*, 157 F.3d at 579.

The Board moves for summary judgment on plaintiff's failure to supervise claim, arguing the evidence does not show a pattern of misconduct on the part of Garrett and Sharp or other SLMPD officers as a whole prior to plaintiff's arrest sufficient to support a failure to supervise

claim. The Board asserts that in the absence of such a pattern, it could not have been on notice or have been deliberately indifferent to the rights of persons with whom SLMPD officers came into contact.

Plaintiff responds that the Board failed to adequately supervise the SLMPD by having an insulating barrier that prevents notice of complaints from being provided to it, as complaints against officers only come to the Board's attention if (1) a punishment of more than fifteen (15) days suspension was imposed by the Inspector of Polices and approved by the Chief of Police, or (2) a non-probationary officer requests a Board trial. Plaintiff quotes Judge Webber's statement that the Board "has either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching the Commissioner Defendants. This is tantamount to turning 'a blind eye' which can be the basis for supervisory liability under 42 U.S.C. §1983." *Rohrbough*, 2008 WL 4722742, at *11.

Plaintiff argues that this "insulating barrier" created a situation in the SLMPD "where a culture of illegality and mendacity was allowed to thrive; a culture in which stealing by officers was overlooked and ignored, in which the Department's own disciplinary code was ignored, and in which charges relating to false reporting and corrupt practices were down-played and white-washed. In support of this argument, plaintiff relies on the same evidence he offers in support of his municipal custom claims. For the same reasons discussed above with respect to Plaintiff's municipal custom claim, this evidence is insufficient to show that a genuine issue of material fact exists with respect to Plaintiff's failure to supervise claim. As previously stated, unlike *Rohrbough*, in which 322 citizen complaints of physical abuse were filed but only one was sustained in the five years preceding Rohrbough's arrest, and unlike *S.L. ex rel. Lenderman*, in which 19 sustained complaints of false reporting and 23 additional instances of false reporting

took place in the five years prior to the plaintiff's injury, here there were no prior sustained complaints of similar misconduct, i.e., false reporting, false testimony, stealing from crime scenes, planting evidence or otherwise manufacturing evidence. As a result, Plaintiff cannot establish an issue of fact as to whether the Board turned a "blind eye" to complaints that would have given it notice of similar officer misconduct. The Board's motion for summary judgment should be granted on Plaintiff's failure to supervise claim.

**Conclusion**

Based upon the foregoing analysis, the Court concludes that the Board's motion for summary judgment should be granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Slay, Battle-Turner, Gray, Lee and Irwin's Motion for Summary Judgment, [Doc. No. 114] is **GRANTED**.

A separate judgment will be entered upon the resolution of the remaining issues herein.

Dated this 26th day of March, 2015.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE